pd-1624-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/19/2015 7:10:12 PM
Accepted 2/20/2015 8:10:50 AM
ABEL ACOSTA
CLERK

No. PD-1624-14
No. PD-1625-14

(Appeal No. 05-13-01112-CR)
(Appeal No. 05-13-01113-CR)

IN THE COURT OF CRIMINAL APPEALS
OF THE STATE OF TEXAS

**CRUZ FRANCO MARTINEZ,**

**Appellant/Petitioner**

**v.**

**THE STATE OF TEXAS**,

Appeal from Dallas County

---

**PETITIONER'S PETITION FOR
DISCRETIONARY REVIEW**

---

Christian T. Souza
Attorney at Law
State Bar Number 00785414
4303 N. Central Expressway
Dallas, Texas 75205
Tel. (214) 862-7462
Fax (214) 696-0867
E-Mail: ctsouza@gmail.com

FILED IN
COURT OF CRIMINAL APPEALS

February 20, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF JUDGE, PARTIES AND COUNSEL

**Trial Court Judge**

Dominique Collins
Criminal District Court Number Four
133 N. Riverfront Blvd.
Dallas, Texas 75207

**Parties to the Judgment**

The State of Texas

Cruz Franco Martinez (Trial No. F12-63640/PD-1624-14/PD-1625-14)
J Cruz Martinez (Trial No. F12-61549)
Cruz Franco Martinez A/K/A Cruz Martinez, J. Cruz Martinez, Cruz
    Martinez Franco (Appeal Nos. 05-13-01112-CR/05-13-01113-CR)

**Defense Counsel at Trial**

Russ Hendrichs
P.O. Box 190983
Dallas, Texas 75219

**State's Attorney at Trial**

Shawnkeedra Houston-Martin, Assistant District Attorney
Shequitta Kelly, Assistant District Attorney
Dallas County Criminal District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

**Petitioner's Attorneys on Appeal in the Fifth District Court of Appeals**

Lynn Richardson, Chief Public Defender
Katherine A. Drew, Assistant Public Defender
Taylor Horton

Dallas County Public Defender's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-2
Dallas, Texas 75207-4399

**State's Attorneys on Appeal in the Fifth District Court of Appeals**

Craig Watkins, Dallas County District Attorney
Patricia Poppoff Noble, Assistant District Attorney
Dallas County Criminal District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

**Petitioner's Attorney on Petition for Discretionary Review in the Texas Court of Criminal Appeals**

Christian T. Souza
4303 N. Central Expressway
Dallas, TX 75205

**State's Attorneys on Petition for Discretionary Review**

Lisa C. McMinn
State Prosecuting Attorney
P. O. Box 13046
Austin, Texas 78711-3046

Patricia Poppoff Noble
Assistant District Attorney
Dallas County Criminal District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

**TABLE OF CONTENTS**

IDENTITY OF JUDGE, PARTIES AND COUNSEL…………………….…..2

INDEX OF AUTHORITIES……………………………………….....…5

STATEMENT REGARDING ORAL ARGUMENT………………….….7

STATEMENT OF THE CASES…………………………………………7

STATEMENT OF PROCEDURAL HISTORY……………....…………..8

QUESTION FOR REVIEW………………………………...………..9

ARGUMENT

**Question**

Whether harm from the use of evidence that a defendant exercised his constitutional rights to remain silent must be evaluated under the rule that applies to constitutional error. (RR3: 97-98; APX-2).

A.    Background…………………………………………………….9

B.    Ruling in Court of Appeals………………….………...11

C.    Type of Judgment Sought……………..………..………13

PRAYER FOR RELIEF…………………...………………………....15

CERTIFICATE OF WORD COUNT……………….....…........……......16

CERTIFICATE OF SERVICE……………...…………........……......16

APPENDIX-1 (COURT OF APPEALS OPINION AND JUDGMENTS)

APPENDIX-2 (EXCERPT OF TESTIMONY)

# INDEX OF AUTHORITIES

*CASES*

*Doyle v. Ohio*,
     426 U.S. 610 (1976)....................................................…….12

*Ex parte Heidelberg*,
     No. AP-75,263; 2006 Tex. Crim. App. LEXIS 2538 (Nov. 15,
     2006)……………………………………………...…………14

*Ford v. State*,
     73 S.W.3d 923 (Tex.Crim.App. 2003).............................…….13

*Fuller v. State*,
     363 S.W.3d 583 (Tex.Crim.App. 2012)……………………...…..13

*Heidelberg v. State*,
     144 S.W.3d 535 (Tex. Crim. App. 2004)……………..………….14

*Mendoza v. State*,
     959 S.W.2d 321, 325-26 (Tex.App.—Waco 1997, pet. ref'd)…....…13

*Miranda v. Arizona*,
     426 U.S. 610 (1966)……………………….……………………..11

*Sanchez v. State*,
     707 S.W.2d 575 (Tex. Crim. App. 1986)……………………….12

*Snowden v. State*,
      353 S.W.2d 815, 818-25 (Tex.Crim.App. 2011)……………….14

*CONSTITUTIONAL PROVISIONS*

TEX. CONST. Art. I § 10.……………………………………….12

U.S. Const. amend. V…………………………………...………….11

U.S. Const. amend. XIV…………………………………………….11

*STATUTES AND RULES*

TEX. CODE CRIM. PROC. art. 11.07……………………………….……..14

TEX. PENAL CODE § 22.021………………………………………………7

TEX. R. APP. P. 33.1……………………………………………………...13

TEX. R. APP. P. 44.2(a) ……………………………………………… …12-14

TEX. R. APP. P. 44.2(b) …………………………………………………12

TEX. R. APP. P. 66.3(c) …………………………………………………14

TEX. R. APP. P. 66.3(d) …………………………………………………14

TEX. R. APP. P. 78.1(d)…………………………………....…………..…14

TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

Comes now Petitioner/Appellant Cruz Franco Martinez and respectfully submits this Petition for Discretionary Review of the judgments and opinion of the Fifth District Court of Appeals affirming his convictions in Nos. PD-1624-14 and PD-1625-14 (Court of Appeals Nos. 05-13-01112-CR and 05-13-01113-CR).

## STATEMENT REGARDING ORAL ARGUMENT

The trial court admitted proof that Petitioner invoked his right to remain silent when that right was explained to him after he was arrested. The Court of Appeals presumed that there were errors in that ruling, but it found them to be harmless under the rule that applies to non-constitutional errors. Oral argument is not necessary, because the State already agrees that an assessment of harm must be undertaken according to the constitutional standard.

## STATEMENT OF THE CASES

A jury found Petitioner guilty on his pleas of not guilty concerning two instances of aggravated sexual assault of a child under age 14, and the jury set punishment in both cases at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. TEX. PENAL CODE § 22.021(a)(1)(B)(iii). (CR1: 8, 65, 73; CR2: 14, 69, 72; RR2: 6-10; RR5:

29). On November 25, 2014, the Fifth District Court of Appeals affirmed Petitioner's convictions.[1] *State v. Martinez*, Nos. 05-13-01112-CR and 05-13-01113-CR; 2014 WL 6678118 (Tex.App.—Dallas Nov. 25, 2014); 2014 Tex. App. LEXIS 12754 (Tex.App.—Dallas Nov. 25, 2014). *See* Opinion and Judgments in Appendix-1 (APX-1) at 1, 10-11.

## STATEMENT OF PROCEDURAL HISTORY

The unpublished opinion of the Fifth District Court of Appeals was entered on November 25, 2014. *See* APX-1. On December 12, 2014, Petitioner timely filed his Motion to Extend Time to File his Petition for Discretionary Review, for both cases, which this Court granted on December 12, 2014, allowing until February 27, 2015. Petitioner timely filed his Petition on February 19, 2015.

---

[1] The Court of Appeals affirmed with modifications as to judgment recitations concerning sex offender registration and the age of the complainants being under 14 years old. *See* APX-1 at 1, 10-11.

8

## QUESTION FOR REVIEW

### Question

Whether harm from the use of evidence that a defendant exercised his constitutional rights to remain silent must be evaluated under the rule that applies to constitutional error. (RR3: 97-98; APX-2).

## ARGUMENT

The Fifth Court of Appeals applied the standard for non-constitutional error in evaluating harm from the errors in allowing evidence that Appellant invoked his right to remain silent. Petitioner asks this Court to agree with the State and Petitioner that the errors should be assessed for harm as constitutional error.

## A. Background

Petitioner had five daughters and one son. (RR3: 83; RR4: 12). The State presented evidence that Petitioner sexually abused three of his daughters: MCM, JM, and MFM. (RR3: 17-24, 58-65; RR4: 37, 39-42, 54). MCM, who was 20 years old at the time of trial, was the complainant in PD-1624-14; JM, who was 23 years old at the time of trial, was the complainant in PD-1625-14; and MFM, who testified as a rebuttal witness, was 31 years old at the time of trial. (CR1: 8; CR2: 14; RR3: 13, 56; RR4: 31, 39-42). MCM told the jury that the sexual abuse started when she was eight or nine years old; JM testified that she endured abuse from when she was about seven years old until she was 14; and MFM told the jury that it

9

began for her when she was about 13. (CR1: 8; CR2: 14; RR3: 15, 22-23, 37, 43, 58-59, 60-65, 67, 76, 94). Petitioner denied sexually abusing his daughters, and he disputed that he created an atmosphere of fear in the household including through physical abuse. (RR4: 7, 9-10, 12, 15, 17, 21-22, 24–31, 46-52, 67-68). Petitioner explained: 1) the complainants wanted to get him out of the house because he was too strict and because he screamed at them, 2) the complainants were under the influence of MFM, who threatened a decade earlier to put Petitioner in jail, and 3) the complainants thought that they could obtain immigration documentation by testifying against Petitioner. (RR4: 9-12, 17, 21, 23-24, 30).

Despite the seriousness and duration of the alleged abuse, none of the girls spoke out until adulthood. (CR1: 36-38; CR2: 8; RR3: 20, 80). MCM told the jury that her outcry was motivated in part to protect a younger sister who was already eight years old at the time of MCM's outcry in 2012. (CR1: 14-16; RR4: 20, 30-32). MCM and JM each told the jury that they were not aware that the other was being abused. (RR3: 34, 70). Petitioner's wife testified that she did not know about or suspect any sexual abuse in the home. (RR3: 90–91, 94; RR5: 11). Also, there was no forensic evidence. (RR5: 29).

The State, in its case-in-chief, called a police detective with little apparent purpose; the detective merely discussed her own background,

10

explained "on or about" allegations, and told the jury that she spoke with Petitioner's children and mother. (RR3: 95–99). *See* Excerpt of Testimony in Appendix-2 (APX-2). The record shows as follows at the end of the detective's testimony:

> Q: Okay, and did you also make an attempt to talk to the defendant?
>
> A: I did.
>
> Q: And did he talk to you?
>
> [Trial Counsel]: Objection on the comment of the defendant's right to remain silent, Judge.
>
> The Court: Overruled.
>
> Q: Did you talk—were you able to talk to the defendant?
>
> A: Whenever I attempted to speak with him, he was under arrest or he was read his Miranda[2] rights. And at that time, he exercised those rights and chose not to speak with me.

(RR3: 97–98). *See* APX-2.

## B. Ruling in Court of Appeals

Petitioner demonstrated in the Court of Appeals that use of the detective's testimony violated Petitioner's "implicit assurance" due process right and his right to silence under the Fifth Amendment and Article I § 10 of the Texas Constitution. (Br. App. at 8-13). U.S. CONST. amends. V,

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 448 (1966).

XIV; TEX. CONST. Art. I § 10; *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976); *Sanchez v. State*, 707 S.W.2d 575, 580 (Tex.Crim.App. 1986). The State noted that mere custody triggers the right to silence in Texas. *Sanchez*, 707 S.W.2d at 582. (Br. State at 12).

In lieu of reaching the merits, the Fifth Court of Appeals affirmed Petitioner's convictions on the bases that:

- The State's case was strong.

- The testimony in question was isolated.

- The State did not attempt to exploit the error.

*See* APX-1 at 6-7.

In finding that the error was harmless, Court of Appeals explained "we have a fair assurance the error did not influence the jury." *See* TEX. R. APP. P. 44.2(b) (allowing an appellate court to affirm non-constitutional error when it has a fair assurance that the error did not influence the jury or did so only slightly); *compare* TEX. R. APP. P. 44.2(a) (requiring reversal for constitutional error when an appellate court cannot determine beyond a reasonable doubt that the error made no contribution to the conviction or punishment). *See* APX-1 at 4. The Court of Appeals did not explain why it disagreed with Appellant and the State, who agreed that the question was whether the error contributed to the verdict. (Br. App. at 13; Br. State at

12

22). TEX. R. APP. P. 44.2(a); *see e.g., Mendoza v. State*, 959 S.W.2d 321, 325-26 (Tex.App.—Waco 1997, pet. ref'd) (applying the Rule 44.2(a) constitutional standard in assessing harm from a comment on the defendant's post-arrest silence).

## C. Type of Judgment of Sought

In order to affirm on the basis that the error was harmless under the wrong standard, the Fifth Court of Appeals skipped the merits and the State's waiver issues. *See* APX-1 at 3. The merits were understandably bypassed. *See* discussion, *supra*, in Part B at 11-12. However, if left with no choice but to conduct a harm analysis under Rule 44.2(a), the Court of Appeals might not so readily dismiss the State's waiver arguments: Petitioner's "right to silence" objection was too general, and he did not request to cure with an instruction. TEX. R. APP. P. 33.1(a)(1), 44.2(a). (Br. State at 12-14).

Considering the outstanding harm and waiver issues, this Court should grant review and summarily remand. *See Fuller v. State*, 363 S.W.3d 583, 589 (Tex.Crim.App. 2012) (noting that this Court normally defers to the Court of Appeals to have the initial opportunity to assess harm); *Ford v. State*, 305 S.W.3d 530, 532-33 (Tex.Crim.App. 2009); *Ford*, 305 S.W.3d at 540-41 (Price, J. Concurring) (illustrating that consideration of preservation

13

issues in this Court is most appropriate when done in order to declare the error preserved so this Court may proceed unencumbered to the merits).

Moreover, the interests of judicial economy would be served. If the Court of Appeals determines that the errors were not waived, and discretionary review is not sought by the State, this Court would expend no further resources. But if the Court of Appeals determines that the errors were waived, Petitioner would have every reason to ask this Court to consider another petition for discretionary review, and assuming that it would not be granted on a run of the mill preservation question, or if granted but Petitioner does not prevail, Petitioner would be well-positioned to seek habeas relief in this Court. TEX. CODE CRIM. PROC. art. 11.07; *Heidelberg v. State*, 144 S.W.3d 535 (Tex.Crim.App. 2004); *Ex parte Heidelberg*, 2006 No. AP-75,263; Tex. Crim. App. LEXIS 2538 (Nov. 15, 2006).

For the reasons shown, this Court should grant review on Petitioner's Question, reverse the judgments of the Court of Appeals affirming the convictions, and summarily remand to the Court of Appeals with instructions to apply the constitutional standard for assessing harmless error. TEX. R. APP. P. 44.2(a), 66.3(d), 66.3(f), 78.1(d); *see Snowden v. State*, 353 S.W.2d 815, 818-25 (Tex.Crim.App. 2011) (providing that the emphasis in review for harm from error in allowing commenting on the right to silence

14

should be on the nature of the error and on the impact of the ruling and that consideration about the source of the error and whether the State should be deterred are no longer appropriate).

## PRAYER FOR RELIEF

Petitioner respectfully prays that this Court grant his Petition for Discretionary Review and reverse the judgment of the Fifth Court of Appeals and remand to the Court of Appeals to reconsider its holding in light of this Court's decision.

Respectfully submitted,

/ s / Christian T. Souza

**Christian T. Souza**
**SBN: 00785414**

4303 N. Central Expressway
Dallas, Texas 75205
Tel. (214) 862-7462
Fax (214) 696-0867
E-mail: ctsouza@gmail.com

*Attorney for Petitioner*

## CERTIFICATE OF WORD COUNT

I hereby certify that the word count in this document is 2,442. The word count relies on Microsoft Word for Mac version 14.2.2.

/ s / Christian T. Souza
Christian T. Souza

## CERTIFICATE OF SERVICE

A copy of this Petition for Discretionary Review has been e-mailed to Patricia P. Noble, Assistant District Attorney, Dallas County, in lieu of service of paper copy, at pnoble@dallascounty.org, and it has been sent to Lisa C. McMinn, State Prosecuting Attorney, at information@spa.texas.gov, also in lieu of service of paper copy.

/ s / Christian T. Souza
Christian T. Souza

*APPENDIX -1*

**Opinion of Court of Appeals**

*State v. Martinez*,
Nos. 05-13-01112-CR and 05-13-01113-CR; 2014 WL 6678118
(Tex.App.—Dallas Nov. 25, 2014); 2014 Tex. App. LEXIS 12754
(Tex.App.—Dallas Nov. 25, 2014).



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-13-01112-CR

No. 05-13-01113-CR

**CRUZ FRANCO MARTINEZ A/K/A CRUZ MARTINEZ, J. CRUZ MARTINEZ, AND J. CRUZ MARTINEZ FRANCO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4
Dallas County, Texas
Trial Court Cause Nos. F12-63640-K and F12-61549-K**

## OPINION

Before Justices Bridges, Francis, and Myers[1]
Opinion by Justice Myers

Appellant Cruz Franco Martinez[2] was convicted by a jury of two cases of aggravated sexual assault of a child under the age of fourteen, and the jury subsequently assessed a punishment of life imprisonment in both cases, which the trial court ordered to run concurrently. In two issues, appellant argues that (1) the trial court erred by admitting testimony that appellant contends was a comment on his post-arrest, post-*Miranda* silence, thereby violating the Fifth and Fourteenth Amendments and Article I, section 10 of the Texas Constitution; and (2) there is insufficient evidence in the record to support the trial court's orders for appellant to pay court

---

[1] Justice David Lewis was a member of the original panel and participated in the submission of this case; however, he did not participate in this opinion. Justice David Bridges has reviewed the record and the briefs in this case. *See* TEX. R. APP. P. 41.1(a).

[2] Appellant's name is spelled "Cruz Franco Martinez" in the parties' briefs and in the indictment and judgment in 05–13–01112–CR. It is spelled "J. Cruz Martinez" in the indictment and judgment in 05–13–01113–CR. In the notices of appeal, appellant signed his name as "Cruz Martinez." Meanwhile, appellant's wife testified that his name was "J. Cruz Martinez Franco," and appellant also testified that this was his name. Lacking documentation regarding appellant's true name, we include all of the aforementioned names in the heading of this case.

costs.  As modified, we affirm.

**DISCUSSION**

***Post-arrest, Post-Miranda Silence***

In his first issue, appellant contends the trial court erred by admitting testimony that commented on appellant's post-arrest, post-*Miranda* silence, thereby violating appellant's Fifth and Fourteenth Amendment rights.  In his second issue, appellant argues that the admission of this testimony also violated appellant's rights under Article I, section 10 of the Texas Constitution.

As part of its case-in-chief, the State called Detective Lisette Rivera of the Dallas Police Department.  Rivera had been assigned to investigate the allegations against appellant.  During Rivera's testimony, the State posed the following questions:

Q. [PROSECUTOR:]  Okay, and did you also make an attempt to talk to the defendant?

A. [RIVERA:]  I did.

Q. And did he talk to you?

[DEFENSE COUNSEL]:  Objection on the comment of the defendant's right to remain silent, Judge.

THE COURT:  Overruled.

Q. [PROSECUTOR:]  Did you talk—were you able to talk to the defendant?

A. Whenever I attempted to speak with him, he was under arrest or he was read his *Miranda* rights.  And at that time, he exercised those rights and chose not to speak with me.

Q. Did you talk to anyone else involved in the case besides the two victims?

A. Yes.

Q. Was that the mom?

A. Yes, I spoke with the mother.

Q. Okay.

–2–

A. And I spoke with several other witnesses.

[PROSECUTOR]: Okay. Pass the witness, Your Honor.

A trial judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement. *Davis v. State*, 329 S.W.3d 798, 813–14 (Tex. Crim. App. 2010); *Russeau v. State*, 291 S.W.3d 426, 438 (Tex. Crim. App. 2009).

Appellant contends the trial court erroneously admitted testimony regarding his post-arrest, post-*Miranda* silence, thereby violating the Fifth and Fourteenth Amendments of the United States Constitution and Article I, section 10 of the Texas Constitution. He argues that the error invited the jury to draw negative inferences against appellant in a situation where the State's case rested on the testimony, and the credibility, of the two complainants. He also argues that it is "quite possible" that the jury used the above testimony as evidence of guilt.

The State responds that (1) the trial court did not err because the State's question was not objectionable as an impermissible comment on appellant's silence; (2) appellant's objection to the State's question as commenting on the defendant's right to remain silent was not sufficient to preserve his federal and state constitutional arguments for appellate review; and (3) appellant waived any error in the witness's allegedly improper comment by failing to object and request an instruction to disregard. The State also contends that the overwhelming nature of the evidence against appellant, and the fact that there was only a single, isolated reference to appellant's post-arrest, post-*Miranda* silence, rendered harmless any potential error from Detective Rivera's allegedly improper comment on appellant's exercise of his right to silence. We will focus our attention on the State's arguments regarding harm.

Assuming appellant's complaints were preserved for appellate review, and that the trial court erred by admitting the complained-of evidence, appellant was not harmed. *See* TEX. R.

APP. P. 44.2(b). The improper admission of evidence is non-constitutional error that an appellate court disregards unless the error affected an appellant's substantial rights. *Id.*; *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *Casey v. State*, 215 S.W.3d 870, 884–85 (Tex. Crim. App. 2007) (using harm analysis in rule of appellate procedure 44.2(b) in determining that evidence of appellant flashing a gang sign was harmless). We will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance the error did not influence the jury, or influenced the jury only slightly. *Barshaw*, 342 S.W.3d at 93.

In assessing potential harm, our focus is not on whether the outcome of the trial was proper despite the error but on whether the error had a substantial or injurious effect or influence on the jury's verdict. *Id.* at 93–94. We review the entire record to ascertain the effect or influence on the verdict of the wrongfully admitted evidence. *Id.* at 93; *see Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010) (in conducting harm analysis "we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence"). We consider all of the evidence that was admitted at trial, the nature of the evidence supporting the verdict, and the character of the alleged error and how it relates to evidence in the record. *Barshaw*, 342 S.W.3d at 94; *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the parties' theories of the case, closing arguments, voir dire, and whether the State emphasized the error. *Barshaw*, 342 S.W.3d at 94; *Motilla*, 78 S.W.3d at 355–56.

In this case, the evidence showed that appellant and Onesima Martinez had been married for thirty-two years and are the parents of six children—five daughters and a son. Three of their daughters, MCM, JM, and MFM, testified that appellant, their biological father, sexually abused them as children. MCM and JM were the complainants in 05–13–01112–CR and 05–13–01113–

–4–

CR, respectively, while MFM testified as a rebuttal witness for the State.

MCM, twenty years old at the time of trial, testified that appellant started sexually abusing her when she was eight or nine years old. MCM described an incident where appellant came into her bedroom when she was sleeping, got into bed with her, and started "like pulling my clothes down." He put his fingers in her vagina, and MCM recalled that this hurt. After a few or perhaps two minutes, he forced her over to her side, grabbed her from behind, and put his penis inside of her. MCM could feel appellant's penis moving in and out of her vagina. The following day, he behaved as though nothing had happened. MCM also recalled an incident where appellant rubbed her breasts under her clothes, kissed her, touched her vagina with his penis, and then had sexual intercourse with her.

MCM testified that appellant "was a very violent person and aggressive." She described an incident where her mother packed clothing and told appellant she and the children were going to leave him. He got furious and started hitting her. When MCM's brother tried to intervene, appellant turned around "and start[ed] beating him up." Appellant threatened to kill Onesima and the children if they called the police. He also threatened to kill himself. MCM testified that she and her sister would hide under the beds when appellant became violent. She also recalled an occasion when appellant and Onesima had been arguing, and Onesima went into the room MCM shared with her sister, saying, "[L]et's go, let's go, he's getting his guns." They fled the house in their pajamas and bare feet, staying with an uncle before Onesima eventually moved back in with appellant.

JM, MCM's twenty-three-year-old sister, testified that she was about seven years old when appellant started sexually abusing her. According to her testimony, the abuse began when, on a day she was not attending school because she was sick, appellant took her into his bedroom, put her on the bed, "and started messing around with me." Appellant "would put his hand on my

–5–

breast, or he would start going down towards my vagina over my clothes." As JM grew older, the abuse escalated to the point where appellant was touching her vagina and breasts under her clothes, sucking on her breasts, and biting her nipples. By the time JM was eight or nine, appellant was licking and sucking her vagina. When JM was around eleven years of age, appellant started inserting his penis into her vagina, and he continued to have sexual intercourse with JM approximately twice a week, almost every week, until she was around twelve or thirteen years old. The last incident she could recall occurred one night when JM was asleep. Appellant entered her room, covered her mouth "really hard," held her down, and pulled down her clothes. He got on top of her and moved his penis in and out of her vagina. She testified that this hurt and that she cried because she was scared, but appellant continued covering her mouth. When he suddenly stopped, he told her "not to say anything or he would hurt us."

JM testified that she still feared appellant. She noted that "[w]e had a lot of domestic violence in the house where [appellant] would be drinking, and he would get aggressive." Appellant threatened to kill everyone in the house if they called the police, including himself, and JM believed these threats because he had two rifles in the house. One night she woke to the sound of a rifle being fired into the air. JM also testified that appellant would beat her or her sisters, her brother, even her mother, and that he once hit JM in the mouth (causing it to bleed) when he asked her a question and she did not know how to respond.

Appellant denied that he had sexual relations with any of his daughters. He testified that MCM and JM had been influenced by their older sister, MFM. He suggested that they were fabricating the allegations against him because his daughters—according to Onesima, five of their children had been born in Mexico and were brought to the United States as children in 1994—hoped "to get their papers" by testifying against him. When asked what papers he was referring to, appellant replied, "Immigration." He also testified that they wanted him out of the

–6–

house because they desired "to bring men into the house, and I would not allow that."

The State's rebuttal witness, MFM, MCM's and JM's thirty-one-year-old sister, testified that she was appellant's oldest child, and had a permit to reside in the United States. She testified that when her family first came to the United States, they slept in a single room, and shared a bed, because the house where they lived was occupied by other people. MFM recalled it was around this time, when MFM was about thirteen years of age, that appellant first abused her sexually—grabbing her under her clothes, sticking his finger in her vagina, and sucking on her breasts. When appellant did this, MFM would hit him and tell him "grosero," which MFM translated as "like being dirty." She testified that she was the only one who would hit back at him when he grabbed at her.

Like her younger sisters, MFM testified that appellant had a violent temper. She recalled he had been violent toward her, her brother, and their mother. After one violent incident, MFM threatened to call the police, but she decided not to do so because appellant told her that "he had to get out sometime, and he was going to hurt my mom where she couldn't walk, and was going to take my baby sister away."

The record also shows that Detective's Rivera's statement quoted above was the only reference at trial to appellant's post-arrest, post-*Miranda* silence. There were no follow-up questions regarding appellant's invocation of his right to remain silent, nor did the State attempt to portray appellant's post-arrest, post-*Miranda* silence as some sort of admission of guilt, or suggest that appellant's guilt could be inferred from his invocation of the right to remain silent. The State never attempted to impeach appellant regarding his post-arrest, post-*Miranda* silence when he testified, nor was it mentioned in the State's closing argument. Given the strength of the State's case against appellant—three of his biological daughters testified that they were sexually abused by him when they were children—and the fact that there was only a single,

isolated reference to appellant's post-arrest, post-*Miranda* silence, we have a fair assurance that the statement about which appellant complains did not influence the jury, or influenced it only slightly. We overrule appellant's first and second issues.

### *Court Costs*

In his third issue, appellant contends there is insufficient evidence in causes 05–13–01112–CR and 05–13–01113–CR for the trial court's orders, included in the judgments in these cases, for appellant to pay $493 in court costs because there is no evidence to support the specific costs assessed by the court. Each clerk's record includes a "Bill of Costs Certification" signed by the deputy district clerk and certified by the district clerk, a computer printout that itemizes the costs assessed in each case, and an explanation of the abbreviations used in the itemization. Appellant nonetheless argues that the computer printouts do not qualify as bills of costs because there is no indication the computer printouts were ever filed in the trial court or brought to attention of the trial court before the costs were included in the judgments. These complaints have been previously considered and rejected. *See Johnson v. State*, 423 S.W.3d 385, 391–96 (Tex. Crim. App. 2014); *Coronel v. State*, 416 S.W.3d 550, 555–56 (Tex. App.—Dallas 2013, pet. ref'd). We overrule appellant's third and fourth issues.

### *Modification of Judgments*

The judgments incorrectly state that the "Sex Offender Registration Requirements do not apply to the Defendant," and they do not state the age of the victim at the time of the offense. Appellant's convictions for aggravated sexual assault of a child under the age of fourteen are among those defined as a "[r]eportable conviction or adjudication" for purposes of the sex offender registration statute. *See* TEX. CODE CRIM. PROC. ANN. art. 62.001(5)(A). As a person who has a reportable conviction or adjudication, appellant is subject to the registration requirements of that program. *See id*. art. 62.051.

–8–

As alleged in the indictments and proven in this case, the victims were younger than fourteen years of age on the alleged dates of the offenses. Because there is sufficient evidence to support the convictions in each case, and because the offenses in each case required a showing that the age of the victim was younger than fourteen, on our own motion we modify the judgments in 05–13–01112–CR and 05–13–01113–CR to show that the sex offender registration requirements apply and that the age of the victim at the time of the offense was younger than fourteen years of age. *See* TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (appellate court has authority to modify incorrect judgments *sua sponte* when the necessary information is available to do so); *see also Tyler v. State*, 137 S.W.3d 261, 267–68 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (authority to modify judgment not dependent upon a party's request); *Ruiz v. State*, No. 05–12–01703–CR & 05–12–01704–CR, 2014 WL 2993820, at *12 (Tex. App.—Dallas June 30, 2014, no pet.) (not designated for publication) (modifying judgments to show applicability of sex offender registration requirements and that age of victim at time of offense was younger than 14 years of age because evidence was sufficient to support convictions in each of the counts, which required a showing that age of victim was younger than fourteen years of age); *Medlock v. State*, No. 05–11–00668–CR, 2012 WL 4125922, *1–2 (Tex. App.—Dallas Sept. 20, 2012, no pet.) (mem. op., not designated for publication) (same); *Johnson v. State*, No. 05–06–00037–CR, 2007 WL 60775, at *7 (Tex. App.—Dallas Jan. 10, 2007, no pet.) (not designated for publication) (same).

As modified, the trial court's judgments are affirmed.

/ Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
131112F.U05

–9–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CRUZ FRANCO MARTINEZ, Appellant

No. 05-13-01112-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F12-63640-K.
Opinion delivered by Justice Myers. Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62" should be changed to "Sex Offender Registration Requirements apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62"

"The age of the victim at the time of the offense was" should be changed to "The age of the victim at the time of the offense was younger than 14 years of age"

As **MODIFIED**, the judgment is **AFFIRMED**. We direct the trial court to prepare a new judgment that reflects these modifications.

Judgment entered this 25th day of November, 2014.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CRUZ FRANCO MARTINEZ, Appellant

No. 05-13-01113-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F12-61549-K.
Opinion delivered by Justice Myers. Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62" should be changed to "Sex Offender Registration Requirements apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62"

"The age of the victim at the time of the offense was" should be changed to "The age of the victim at the time of the offense was younger than 14 years of age"

As **MODIFIED**, the judgment is **AFFIRMED**. We direct the trial court to prepare a new judgment that reflects these modifications.

Judgment entered this 25th day of November, 2014.

# *APPENDIX -2*

## *Excerpt of Reporter's Record*

*State v. Martinez*,
Nos. 05-13-01112-CR and 05-13-01113-CR; 2014 WL 6678118
(Tex.App.—Dallas Nov. 25, 2014); 2014 Tex. App. LEXIS 12754
(Tex.App.—Dallas Nov. 25, 2014).

MS. HOUSTON-MARTIN: State calls Detective Rivera.

THE COURT: All right.

(Witness sworn.)

THE COURT: You may be seated.

DETECTIVE LISETTE RIVERA,

having been first duly sworn, testified as follows,

DIRECT EXAMINATION

BY MS. HOUSTON-MARTIN:

Q. Good afternoon.

A. Good afternoon.

Q. Can you please introduce yourself to the jury.

A. I'm Detective Lisette Rivera. That's R-i-v-e-r-a.

Q. And where are you currently employed?

A. I am currently employed with the Dallas Police Department as a detective.

Q. And could you give the jury some of your training and background, how you came to be a police officer?

A. Okay. I've been with the Dallas Police Department approximately 13 years. I started in the police academy. It's about eight months of training, laws, physical training, different scenarios, things like that. After that, I went to patrol. I had to do six months of -- I did training with an officer, and then after that, I was on the streets for about six years.

Q. Okay. And at some point, were you a detective in the child abuse unit?

A. I was.

Q. And how long were you in the child abuse unit?

A. For about five-and-a-half years.

Q. And what were your duties in the child abuse unit as a detective?

A. With child abuse, I was in charge of investigating the physical sexual abuse of children, also the deaths and homicides of children by parents and caretakers.

Q. And what division do you currently work in?

A. I work for the -- it's intelligence -- criminal intelligence division.

Q. Okay. Were you the detective assigned to the case against J. Cruz Martinez?

A. Yes, ma'am.

Q. And how did you become involved in that case -- or those cases?

A. One of the reports was generated by a patrol officer. 9-1-1 was called. The report was generated. Those officers then come to our office, which are then assigned by a supervisor.

Q. Okay. And so you were still in child abuse around October of 2012?

A. Yes.

Q. Okay. And once you were assigned these cases, did you talk to both the complainants, Juanita Martinez and Maria del Carmen Martinez?

A. Yes.

Q. Okay. Can you tell the jury how you come up with the -- well, once you file the case, is that when you get it to the D.A.'s office?

A. Yes, ma'am.

Q. Okay. So how do you come up with the on-or-about date that's listed in the indictment?

A. Whenever I speak with the victims and they describe the abuse, though I'll usually ask when it started. They'll say ages, you know, six, seven, eight years old. I'll ask when it stopped. They'll give me a range, 11, 12, 13. So I use that date range.

Q. Okay. But it's not like they told you an exact date that these things happened? They just told you the age ranges that the abuse occurred?

A. Correct.

Q. Okay. And did you also make an attempt to talk to the defendant?

A. I did.

Q. And did he talk to you?

MR. HENRICHS: Objection on the comment of the defendant's right to remain silent, Judge.

ANDREA L. REED, DEPUTY COURT REPORTER

THE COURT: Overruled.

Q. (BY MS. HOUSTON-MARTIN) Did you talk -- were you able to talk to the defendant?

A. Whenever I attempted to speak with him, he was under arrest or he was read his Miranda rights. And at that time, he exercised those rights and chose not to speak with me.

Q. Did you talk to anyone else involved in the case besides the two victims?

A. Yes.

Q. Was that the mom?

A. Yes, I spoke with the mother.

Q. Okay.

A. And I spoke with several other witnesses.

MS. HOUSTON-MARTIN: Okay. Pass the witness, Your Honor.

CROSS-EXAMINATION

BY MR. HENRICHS:

Q. Ma'am, the two ladies that you spoke to, Juanita and Carmen, they came together to your -- to your facility; is that correct?

A. Initially, no, sir.

Q. Okay. Did they come together to your facility, though? Were they together the day you interviewed Juanita?

A. No, sir.

Q. Okay. You interviewed Juanita on a videotape, did

you not?

A.  Correct.

Q.  Okay.  You didn't say on the videotape, your sister is over in the other office or something to that effect?

A.  I believe she came with other family members.

Q.  But she was there at the same time more or less?

A.  But the other sister, the other victim was not there that day.

Q.  Okay.

MR. HENRICHS:  No further questions, Judge.

MS. HOUSTON-MARTIN:  Nothing further.

THE COURT:  May this witness be excused?

MS. HOUSTON-MARTIN:  No objection from the State.

MR. HENRICHS:  No objection.

THE COURT:  You may be excused, ma'am.

THE WITNESS:  Thank you.

THE COURT:  All right.  State, call your next witness.

MS. HOUSTON-MARTIN:  State calls Heather Sims.

THE COURT:  All right.  Can you put your right hand up for me, please.

(Witness sworn.)

THE COURT:  All right.  You may be seated.

HEATHER SIMS,