

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00368-CR

Peter Mark **LEE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Trial Court No. 493014
Honorable Genie Wright, Judge Presiding

Opinion by:    Irene Rios, Justice
Concurring Opinion by: Rebeca C. Martinez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Irene Rios, Justice

Delivered and Filed:  August 2, 2017

AFFIRMED

A jury found Peter Lee guilty of the offense of misdemeanor assault with bodily injury, and the trial court assessed punishment at one year in jail, suspended in favor of two years community supervision.  On appeal, Lee contends the trial court erred by (1) admitting statements made by the complainant during an emergency call in violation of his Sixth Amendment right to confrontation; and (2) allowing an expert to give a lay opinion of how the complainant received her injuries.  The judgment of the trial court is affirmed.

**BACKGROUND**

On October 25, 2014, appellant Peter Mark Lee and his wife, complainant Rachel Lee, attended a party with their two sons. Lee testified both he and Rachel had wine at the party. According to Lee, Rachel had at least three glasses of wine and was becoming short with their children so he suggested it was time for them to go home. Lee testified Rachel insisted on driving home because she had driven to the party. On the drive home, Rachel missed a turn-off and became agitated. She told Lee to drive, and, according to Lee, continued to be argumentative. Once they reached their subdivision, Lee pulled over at Rachel's request so she could walk home.

Lee described Rachel as "beside herself, completely irrational, illogical, [and] verging on incoherent" when she arrived home on foot. According to Lee, he left the front door unlocked and the porch light on, but Rachel accused him of locking her out. Eventually, the couple both ended up in the master bedroom, where Rachel blockaded the door with her body and did not allow Lee to leave. Lee testified he twice, without using more force than necessary, grabbed Rachel from the door and "put her on the bed." According to Lee, Rachel then kicked him in the groin, and he again put her on the bed but this time held her down. The altercation escalated into a "full-scale fight" for one or two minutes with Lee on top of Rachel on the bed. Lee testified Rachel slapped him and it was "entirely possible" he slapped her and pulled her hair. Lee testified his injuries included a black eye, swollen cheek, nosebleed, scratches, bruising on his arms and ribs, and pain in his groin.

According to Lee, once the situation calmed, Rachel left the bedroom while he stayed. Rachel returned to the bedroom twice to retrieve her glasses and cell phone.

Rachel contacted emergency services to report a "domestic." Boerne Police Department responded, and Acadian Ambulance Services was dispatched to the scene upon a responding officer's request. Investigating officer David Price testified Rachel's injuries included bruising on

both arms from her fingertips to her shoulders and severe swelling and bruising on her nose and around both eyes. She also had injuries to the inside of her mouth. Officer Price testified he was able to smell alcohol on the breaths of both Lee and Rachel. He described Lee as calm and characterized Rachel's speech as how he would "describe somebody who was in shock from a traumatic experience."

Ultimately, Lee was arrested and later charged by information with the offense of assault with bodily injury, a Class "A" misdemeanor. A jury found Lee guilty of the offense, and the trial court sentenced Lee to one year in jail, probated for two years.

ISSUE ONE - CONFRONTATION CLAUSE

In his first issue on appeal, Lee contends the trial court erred by admitting State's Exhibits 1 and 14, a recording and redacted recording of Rachel's emergency call, in violation of Lee's Sixth Amendment right to confrontation.

**Standard of Review**

We review *de novo* a trial court's ruling on the admission of evidence over a confrontation clause objection. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006) ("Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling, [such as] whether a statement is testimonial or non-testimonial, *de novo*."); *Hamilton v. State*, 300 S.W.3d 14, 20 (Tex. App.—San Antonio 2009, pet. ref'd) ("We review *de novo* the trial court's ruling admitting evidence over a confrontation objection.").

**Applicable Law**

The Confrontation Clause of the Sixth Amendment prohibits admission of "testimonial" statements of a witness who did not appear at trial[1] unless: (1) the party is unavailable to testify

---

[1] Rachel did not testify during trial. A discussion of Rachel's availability and the State's efforts to produce her as a witness was held outside the jury's presence, but Rachel's availability was not raised on appeal.

and (2) the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Although *Crawford* did not define "testimonial," it did find that at a minimum, statements are testimonial if they were made as part of prior testimony in a hearing or former trial or those made during police interrogations. *Id.*

Whether statements made to law enforcement were "testimonial" was subsequently clarified by the United States Supreme Court in the companion cases of *Davis v. Washington* and *Hammon v. Indiana. Davis v. Washington*, 547 U.S. 813, 817–18 (2006). In those cases, the Court found "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 814. In contrast, statements are "testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*

The challenged testimony in *Davis* was held to be nontestimonial because "the circumstances of [the unavailable witness]'s interrogation objectively indicate[d] its primary purpose was to enable police assistance to meet an ongoing emergency." *Id.* at 813. In reaching this conclusion, the Court relied upon the following factors: (1) the unavailable witness spoke "about events as they were actually happening, rather than describing past events"; (2) the unavailable witness, facing an ongoing emergency, called "for help against a bona fide physical threat"; (3) the "elicited statements were necessary to be able to resolve the present emergency"; and (4) the informal interrogation where the unavailable witness's "frantic answers were provided over the phone, in an environment that was not tranquil, or even ... safe." *Id.* (internal quotations omitted).

In *Vinson v. State*, the Texas Court of Criminal Appeals set forth a nonexclusive list of factors to consider in determining whether a particular statement was testimonial:

> 1) whether the [emergency] was still in progress; 2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past; 3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; 4) whether the questioning was conducted in a separate room, away from the alleged attacker; and 5) whether the events were deliberately recounted in a step-by-step fashion.

*Vinson v. State*, 252 S.W.3d 336, 339 (citing *Davis*, 547 U.S. at 829–30).

"In the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, ___U.S.___, 135 S.Ct. 2173, 2180 (2015) (alteration in original) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143 (2011)).

## Discussion

On appeal, Lee contends the trial court erred because there was no ongoing emergency. First, Lee points out the call begins with the operator answering "Boerne Police Department," ("BPD"), rather than 9-1-1, which he argues indicates a non-emergency. Lee also argues Rachel's call to BPD was not to report an event as it occurred, but to describe an event that happened an hour in the past. Lee further argues the facts that Rachel called her sister before the police and then told the operator the situation was not urgent shows her purpose was not to obtain police assistance in an ongoing emergency. Finally, Lee argues the questions asked by the operator were "structured police questioning" indicating a testimonial statement.

The existence of an ongoing emergency is relevant to the determination of an interrogation's primary purpose because "an emergency focuses the participants on something other than 'prov[ing] past events potentially relevant to later criminal prosecution.'" *Bryant* at 361 (quoting *Davis*, 547 U.S. at 822). However, it is not the only relevant inquiry to determine the

primary purpose. *Id*. at 362-65. Further, the Supreme Court has clarified that "emergency" is not limited to lasting only as long as the event itself. *Id*. at 373-74.

Sergeant Cody Lackey with BPD testified the call Rachel made was directly to a number associated with BPD dispatch. He also testified it was considered a 9-1-1 call. Additionally, Rachel's statements to the operator indicate the emergency was ongoing. Although the actual assault ended, the person who attacked Rachel was still in the house. Rachel's statement that she called her sister and told her sister that "if anything ever happens to me and he passes — tries to pass it off as an accident, it wasn't an accident" indicates Rachel was still fearful and seeking help to secure protection.

During the call, Rachel explains some of what happened during the altercation, but the call is not a narrative. Rachel did not deliberately recount the events in a step-by-step fashion. Her statements during the call are not a "solemn declaration of affirmation" of a witness "bear[ing] testimony" as was described in *Crawford*. Additionally, although Rachel's voice sounds somewhat calm in the recording, her responses are sometimes unintelligible and rambling.

The record supports that the primary purpose of the operator's questioning was not to memorialize a crime. In addition to attempting to determine the extent of Rachel's injuries, the operator's questions addressed things a responding officer would need to know, such as who was in the house with Rachel and whether any intoxicated individuals or weapons in the home posed a danger to responders.

Lee contends Rachel herself described the situation as not urgent. The record shows Rachel described both her injuries and how she received those injuries during the call, but responded "[i]t's not urgent" when asked if she wanted an ambulance. Rachel then agreed to wait for an officer to determine whether an ambulance should be called.

Based on an objective review of the record, the statements contained in the 9-1-1 recording were nontestimonial. The primary purpose of Rachel's statements to the operator was to obtain help, and the record does not support the conclusion Rachel's statements were made for the purpose of providing testimony against Lee. Accordingly, the admission of the non-testimonial redacted recording of Rachel's emergency call was proper.

Issue one is overruled.

## ISSUE TWO – LAY TESTIMONY VS. EXPERT TESTIMONY

Lee contends the trial court erred by permitting the State to introduce expert testimony as lay testimony. Lee argues "an EMT is clearly an expert." Lee reasons that because a person must have a certification to work as an EMT, which requires training and experience beyond that of the average citizen, she was qualified as an expert witness and could offer her opinion under Texas Rules of Evidence. *See* TEX. R. EVID. 702. Lee further argues the testimony given by EMT Jovanca Liedl could not qualify as lay testimony under Rule 701 because the perception of what activities were capable of causing the injuries in the photographs offered by the State is not something possessed by a person lacking the skills of an expert. *See id.* R. 701.

## Applicable Law and Standard of Review

A lay witness can testify in the form of an opinion under Rule 701 if the opinions or inferences are (a) rationally based on his or her perceptions and (b) helpful to the clear understanding of the testimony or the determination of a fact in issue. *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002) (citing *Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997) (en banc)). As a general rule, observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met. *Id*. at 537. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

TEX. R. EVID. 702.

"When a witness who is capable of being qualified as an expert testifies regarding events which he or she personally perceived, the evidence may be admissible as both Rule 701 opinion testimony and Rule 702 expert testimony." *Osbourn*, 92 S.W.3d at 537. "A person with specialized knowledge may testify about his or her own observations under Rule 701 and may also testify about the theories, facts and data used in his or her area of expertise under Rule 702." *Id.*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002) (citing *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001)). We do not reverse the trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). In applying the abuse of discretion standard, we may not reverse a trial court's admissibility decision solely because we disagree with it. *See Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

**Discussion**

During jury selection, the trial court took up Lee's motion to exclude, among other things, testimony or evidence offered by a State's expert witness. The trial court granted Lee's motion and entered an order that "exclude[d] any testimony or evidence offered by any expert witness of the State at trial."

The State's final witness was EMT Jovanca Liedl who testified she was dispatched to the house where she encountered Rachel in the bedroom. Liedl testified Rachel had "bruising to her eye and bruising around her nose." Lee objected to further testimony from Liedl, citing *Crawford* and confrontation grounds. The trial court ruled the State could ask the questions, but Liedl could not testify as to what Rachel told her directly. The trial court also ruled the State could ask Liedl's opinion of how she thought the injuries occurred, but not what Rachel told Liedl happened. Further, the trial court stated that "medical diagnosis and treatment has to do with the actual injury itself" and Liedl had already testified regarding the bruises she saw. The trial court stated:

> I'm not going to let you get into how – what [Rachel] told her about how the bruises got there, but as a professional, as an EMT, she can certainly avail herself of her experience and knowledge to give an educated opinion on how they got there.

The State went on to ask Liedl how she believed the injuries occurred, and Lee objected to Liedl's qualification to answer the question. The State responded Liedl was not presented as an expert witness, but was testifying regarding her personal observation. Liedl was taken on voir dire. In response to voir dire questioning, Liedl stated she had been an EMT for one and a half years and had studied anatomy.

The State then questioned Liedl in front of the jury. Lee objected to the State's following question of Liedl:

> Based on that training and experience you have through your education and through your experience, are you able to tell this jury your opinion as to how [Rachel] received her injuries that night.

Lee reminded the trial court of the ruling excluding expert testimony due to the State's failure to provide notice and insisted the State's question required an expert opinion. The trial court ultimately responded:

> I do not consider her an expert. I consider her an EMT who was sent because they always send an EMT if they felt there was an injury. She can testify as an EMT if she saw the injuries and treated the injuries and in her opinion how the injuries may

have happened. For example, if she had gone to a car wreck, she could say, I believe these injuries were caused by a car wreck.

Lee insisted being a trained EMT made Liedl an expert, but the trial court disagreed and likened being a trained EMT dispatched to an injury to a trained police officer sent to a crime scene.

The State then asked Liedl her opinion of the cause of Rachel's injuries, to which Liedl responded, "She did receive blunt force trauma." The State followed up by asking if that was consistent with the striking of a hand. Liedl responded with, "Could be consistent with the striking of anything, ma'am."

Assuming, without deciding, that the trial court erred by admitting Liedl's testimony, the admission of that testimony was not harmful. The erroneous admission of evidence is non-constitutional error. *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). Non-constitutional error requires reversal only if it affects the substantial rights of the accused. TEX. R. APP. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). "'A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.'" *Thomas v. State*, 505 S.W.3d 916, 926 (Tex. Crim. App. 2016) (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)).

In assessing potential harm, our focus is not on whether the outcome of the trial was proper despite the error but on whether the error had a substantial effect or influence on the jury's verdict. *Barshaw*, 342 S.W.3d at 93-94. We review the entire record to ascertain the effect or influence on the verdict of the wrongfully admitted evidence. *Id.* at 93. We consider all of the evidence that was admitted at trial, the nature of the evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with other evidence in the case. *Id.* at 94. We may also consider the jury instructions, the parties' theories of the case, closing arguments, voir dire, and whether the State emphasized the error. *Id.* The weight of the evidence

of the defendant's guilt is also relevant in conducting a harm analysis under Rule 44.2(b). *Neal v. State*, 256 S.W.3d 264, 285 (Tex. Crim. App. 2008).

In the instant case, the jury heard the redacted version of the emergency call Rachel made to BPD, which included Rachel's description of her injuries and the events leading to those injuries such as "he was sticking his fingers down my throat," "he kept smashing me in the face," and "[h]e was slapping my face." The jury also heard testimony from the responding officers who described Rachel's injuries and both Rachel's and Lee's demeanors. The jury also viewed the photographs taken by police of Rachel's injuries. Additionally, the jury heard Lee's testimony describing the altercation and his admission that it was "entirely possible" he had slapped Rachel and pulled her hair. We further note the State's limited focus on Liedl's testimony.

Given the nature of the live testimony, the recording, and other evidence in the record, we have fair assurance that hearing Liedl's brief and limited testimony did not influence the jury, or influenced the jury only slightly. Thus, because the error, if any, did not have a substantial and injurious effect or influence in determining the jury's verdict, it did not affect appellant's substantial rights. Accordingly, the trial court's error, if any, was harmless.

Issue two is overruled.

## CONCLUSION

Based on the foregoing reasoning, we affirm the judgment of the trial court.


Irene Rios, Justice

DO NOT PUBLISH