

# NUMBER 13-17-00214-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RODOLFO MARTINEZ ALVAREZ,                                    Appellant,

v.

THE STATE OF TEXAS,                                    Appellee.

### On appeal from the 377th District Court
### of Victoria County, Texas.

## MEMORANDUM OPINION

**Before Justices Contreras, Longoria, and Hinojosa**
**Memorandum Opinion by Justice Hinojosa**

Appellant Rodolfo Martinez Alvarez appeals his conviction for aggravated assault, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West, Westlaw through 2017 1st C.S.). A jury returned a guilty verdict and assessed punishment of fifteen years' imprisonment in the Texas Department of Criminal Justice-Institutional Division and a $7,500 fine. The trial court sentenced appellant accordingly. By one

issue, appellant argues that the trial court abused its discretion when it overruled appellant's Rule 403 objection to photographic evidence.   We affirm.

## I.   BACKGROUND

Appellant was involved in a high-speed vehicle collision, injuring Y.C. and killing Y.C.'s nine-year-old daughter P.C.[1]   A grand jury returned a three-count indictment charging appellant with (1) the murder of P.C., (2) aggravated assault by causing serious bodily injury to Y.C., and (3) intoxication assault of Y.C.   The State proceeded to trial on count 2 only.

Y.C. testified that she was driving to Wal-Mart in Victoria, Texas late at night. P.C., who was wearing a seat belt, was asleep in the backseat of her vehicle, a 2001 Ford Expedition.   As Y.C. neared Wal-Mart, she told P.C. it was time to wake up.   Y.C. then noticed a vehicle turning on the road behind her, exiting the Two Step Bar.   She observed a vehicle's headlights approaching at a high rate of speed in her driver's side mirror.   The next thing Y.C. remembered was waking up in the emergency room.   Y.C. suffered a broken arm, broken ribs, lacerations to her head, and a collapsed lung.   Y.C. was informed by her husband and hospital staff that P.C. was in a coma and would likely never regain consciousness.   She decided with her husband to take P.C. off of life support. The State introduced as State's exhibit 1 a photograph of P.C. taken prior to the accident and approximately six months before her death.   The trial court admitted the exhibit over appellant's Rule 403 and relevancy objections.   See TEX. R. EVID. 402, 403.   The trial court also admitted State's exhibit 10, two photographs of P.C. lying on an examination

---

[1] We use initials to refer to the minor decedent and her family to protect their privacy.

2

table following her death, over appellant's same objections.

Brandon Allen, an officer with the Victoria Police Department, testified concerning his investigation of the accident, which included an accident reconstruction. Officer Allen testified that the speed limit at the site of the collision was fifty miles per hour. Officer Allen determined through his investigation, which included reviewing data from the "black box" of appellant's vehicle, that appellant was travelling approximately eighty-nine miles per hour when his vehicle rear-ended Y.C.'s vehicle. As a result of the impact, Y.C.'s vehicle left the roadway, became airborne while spinning and rolling, before coming to rest in a ditch 441 feet away. Officer Allen stated that even at such a high rate of speed, appellant should have been able to avoid colliding with Y.C.'s vehicle.

Caesar Villarreal, a corporal with the Texas Department of Public Safety, testified that he reviewed data downloaded from the airbag control module of appellant's vehicle. Corporal Villarreal stated that appellant's vehicle was travelling at a speed of ninety-four miles per hour just prior to impact and eighty-nine miles per hour at the point of impact, which caused appellant's vehicle to slow by 21.97 miles per hour. According to Corporal Villarreal, the data showed that appellant did not brake or take evasive action prior to the collision.

Blair Cerny, an officer with the Victoria Police Department, testified that he responded to the scene of the accident. Officer Cerny observed that Y.C. was conscious and that she was bleeding profusely from her face and head. He also observed P.C. slumped over in the backseat. The doors to the vehicle would not open, so Officer Cerny leaned through a shattered window to make contact with P.C. He noticed that P.C. was

unconscious and her breathing irregular, but he detected a pulse. Officer Cerny stayed with P.C. to monitor her condition. When P.C.'s pulse stopped, he then decided to remove P.C. from the vehicle. With the aid of another officer, they removed P.C. by pulling her through the window. At that point, P.C. was attended to by emergency medical responders.

Austin Carter, an emergency medical technician for the Victoria Fire Department, responded to the scene of the accident. Carter testified that he spoke to appellant to determine if he required medical attention, which appellant refused. According to Carter, appellant stated that he recently consumed "three to four beers." Carter stated that appellant's breath smelled of alcohol.

John Maresh, a Victoria Police Department officer, made contact with appellant at the accident scene. Officer Maresh observed appellant behind the wheel of a Ford F-350 truck with heavy front-end damage. Appellant was unable to recall any details concerning the accident. Officer Maresh detected a strong odor of alcohol once appellant exited the vehicle. He also observed that appellant's eyes appeared bloodshot, glassy, and watery.

After appellant was assessed by an emergency medical technician, Officer Maresh administered field sobriety tests. The trial court admitted a dash-cam video recording showing the administration of the tests. Officer Maresh observed all six clues of intoxication when administering the horizontal gaze nystagmus test. During the walk and turn test, Officer Maresh observed appellant fail to maintain balance, walk heel to toe, maintain a straight line, turn properly, and take the correct number of steps—all clues of

4

intoxication. When asked to balance on one leg, appellant used his arms for balance, swayed, and put his foot down several times. Officer Maresh concluded that appellant was intoxicated and placed him under arrest.

Officer Maresh requested that appellant provide a voluntary blood specimen. Appellant declined to do so, but he said that "he probably had too many or it was over the limit." Officer Maresh obtained a search warrant to secure a sample of appellant's blood. He then transported appellant to the hospital and observed the drawing of appellant's blood. The trial court admitted a laboratory report prepared by the Texas Department of Public Safety Crime Laboratory which showed that appellant's blood alcohol concentration was 0.101 grams of alcohol per 100 milliliters.[2]

Cynthia Savage, M.D., a physician at Citizens Medical Center, testified that appellant was brought to the emergency room following the accident where she examined him. The trial court admitted appellant's medical records which indicated that appellant appeared to be intoxicated and smelled of alcohol.

Matthew Janzow, M.D., treated Y.C. for her injuries. Janzow testified that Y.C. suffered scalp and back lacerations, a broken arm, eight broken ribs, and a bruised and collapsed lung. Janzow stated that Y.C. was at risk of death and permanent disfigurement had her injuries not been treated.

Jeorg-Ann Nevins, a friend of Y.C., testified that on the night of the accident she carried a sleeping P.C. to Y.C.'s vehicle. Nevins placed P.C. in the driver's side back

---

[2] A person is intoxicated under the Texas Penal Code if the person's alcohol concentration is .08 grams of alcohol or more per 100 milliliters of blood. TEX. PENAL CODE ANN. § 49.01(2)(B) (West, Westlaw through 2017 1st C.S.).

seat and secured her seat belt with the shoulder strap in front of P.C. Nevins later saw P.C. at the hospital and noticed a bruise on her face and neck. Nevins stated that the bruising was located in the area where the seat belt would have contacted P.C.'s body. Nevins also testified that signs of bruising could be seen on P.C.'s face in State's exhibit 10.

The State also asked Nevins to identify State's exhibit 2, which she described as a photograph of P.C. taken just prior to the accident. Appellant objected to the admission of the photograph under Texas Rules of Evidence 403 and 404. *See id.* R. 403, 404. The State responded that the photograph was admissible to demonstrate that P.C.'s face was not bruised prior to the accident and that the bruising following the accident demonstrated that P.C. was wearing a seatbelt. The trial court overruled appellant's objections and admitted the exhibit.

The jury found appellant guilty of aggravated assault. The jury also made an affirmative finding that appellant used or exhibited a deadly weapon during the commission of the offense. This appeal followed.

## II.   DISCUSSION

In his sole issue, appellant argues that "[t]he trial court erred by admitting, over defense objections under Texas Rule of Evidence 403," State's exhibits 1, 2, and 10.

### A.   Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court abuses its discretion when its decision lies outside the zone of reasonable

disagreement.  *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).  A trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case.  *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

Rule 403 provides that, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."  TEX. R. EVID. 403.  Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial.  *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010).  A photograph is generally admissible if verbal testimony about the matters depicted in the photograph is also admissible.  *See Young v. State*, 283 S.W.3d 854, 875 (Tex. Crim. App. 2009).  Rule 403 requires that a photograph possess some probative value and that its inflammatory nature not substantially outweigh that value.  *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009).

A court may consider several factors in determining whether the danger of unfair prejudice substantially outweighs the probative value of photographs, including the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black and white, whether they are close-up, and whether the body depicted is clothed or naked.  *See Young*, 283 S.W.3d at 875.  But a court should not be limited by this list.  *Id.*  It should also consider the availability of other means of proof and the circumstances unique to each individual case.  *Id.*

7

**B.     Analysis**

Appellant argues that "[w]hile the three photos of [P.C.] would likely be admissible at the trial of an indictment alleging that [P.C.] was the victim of a murder or other homicide, it should *not* be so at the trial of an indictment for aggravated assault on her adult mother."   (Emphasis in appellant's brief).   Appellant posits that the probative value of the photos was "to show that a vehicle can indeed serve as a deadly weapon." However, appellant argues that this purpose "was thoroughly satisfied when the State produced evidence of [Y.C.'s] serious bodily injuries from the crash."   The State responds that evidence of P.C.'s death was indeed relevant to establish appellant was using his vehicle as a deadly weapon during the commission of the aggravated assault. The State also maintains that pictures of P.C. in life gave the jury a point of reference to compare to P.C.'s facial injuries depicted in State's exhibit 10.   The State further notes that the exhibits are not unnecessarily cumulative or particularly gruesome.

We find the court of criminal appeals' decision in *Prible v. State* instructive.   175 S.W.3d 724 (Tex. Crim. App. 2005).   In that case, the defendant was convicted of capital murder for shooting and killing two people during the same criminal offense.   *Id.* at 726. The State's evidence established that the defendant also murdered the complainants' three children in setting a fire to cover up the murders of the parents.   *Id.* at 727.   The court held that evidence of the children's death was admissible under Texas Rule of Evidence 404 as same-transaction contextual evidence.   *Id.* at 732.   "[I]t was not an abuse of discretion in this case for the trial court to conclude that the murders of [the parents] and deaths, by smoke inhalation, of their three children were so connected that

8

they formed an indivisible criminal transaction." *Id.* The court explained that "testimony about the children's deaths fills in gaps of the interwoven events and consequences of a defendant's criminal conduct and thus helps the jury to understand the case in context." *Id.*

Next, the court concluded that the admission of evidence concerning the children's death did not violate Rule 403. *Id.* at 733. Such evidence was probative in that it corroborated witness testimony that the defendant knew the children were in bed when he set the fire. *Id.* Therefore, the court concluded that the evidence tended to show that it was the defendant who committed the crime. *Id.* Regarding the prejudicial effect of the evidence, the court explained, "No matter how angry the jury might have been about the children's deaths, that emotional response could be connected to appellant only if the jury first found that he caused their parents' death." *Id.*

The court then concluded that the admission of crime scene photographs depicting the children's bodies did not violate Rule 403. *Id.* at 734. In each of the photographs, the children were clothed and their bodies were covered in soot. *Id.* at 735. The children were not mutilated or charred. *Id.* The court determined that the danger of unfair prejudice from the admission of the photos was small. *Id.* The court continued: "The crime scene photographs depicting the location and condition of the children's bodies were limited in number, and the State focused on them only to the extent necessary to explain the neighbor's and firefighters' attempts to account for all the inhabitants of the house and to corroborate [a witness's] testimony." *Id.*

Finally, the court concluded that the admission of autopsy photographs of the

9

children depicting dissected body parts violated Rule 403 but that such error was harmless. *Id.* at 737–38. The court reasoned in part that "at the time of their admission, the jury had already seen and heard about the disturbing circumstances of the children's deaths through properly admitted photographs and testimony." *Id.* at 738.

Like *Prible*, this case involves the admission of evidence pertaining to the death of a child, which resulted from the same criminal transaction for which appellant was being tried. Accordingly, evidence that P.C. died in the collision was relevant and admissible as same-transaction contextual evidence. *See id.* at 732; *see also Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (explaining that evidence of another crime, wrong, or act may be admissible as same-transaction contextual evidence where several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony of any one of them cannot be given without showing the others). Furthermore, such evidence was probative of whether or not appellant used his vehicle as a deadly weapon during the commission of the offense of aggravated assault, a question which the jury answered in the affirmative. *See* TEX. PENAL CODE ANN. § 1.07(17)(B) (West, Westlaw through 2017 1st C.S.) (defining deadly weapon as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury"); *Duran v. State*, 492 S.W.3d 741, 745 (Tex. Crim. App. 2016) (explaining that the entry of a deadly weapon finding affects a defendant's eligibility for parole).

With respect to the complained of photographs, we conclude that they are no more prejudicial than the crime scene photographs in *Prible*. State's exhibits 1 and 2 depict

10

P.C. prior to her death—exhibit 1 shows P.C. months earlier, exhibit 2 shows P.C. hours before the accident. State's exhibit 10 contains two photographs of P.C. lying on an examination table following her death. One of the photographs shows a close-up of P.C.'s face and neck. No injuries are apparent in the photograph aside from a faint bruise on P.C.'s face. The second photograph depicts P.C.'s full body from the side. While P.C. is not clothed, a cast covering her left leg obscures her lower half. Other than the cast, there are no injuries indicated in the photograph.

The State's focus on these photographs was primarily limited to corroborating testimony that P.C. was properly secured with a seatbelt. This was done by highlighting bruising where the shoulder strap would have contacted P.C. The four photographs contain no gruesome depictions. While they are in color, they do not show in great detail the injuries sustained and do not appear to be atypical in size. The number of photographs was not voluminous, and the State's introduction of the evidence did not consume an inordinate amount of time. We also note, as did the court in *Prible*, that any emotional response by the jury to the photographs would not be connected to appellant unless the jury first found that appellant was responsible for the accident. *See Prible*, 175 S.W.3d at 733.

Where elements of a photograph are genuinely helpful to the jury in making its decision, and the photograph's power "emanates from nothing more than what the defendant himself has done[,] we cannot hold that the trial court has abused its discretion merely because it admitted the evidence." *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995). The trial court's determination that the photographs' probative value

11

was not substantially outweighed by a danger of unfair prejudice was not outside the zone of reasonable disagreement. *See Montgomery*, 810 S.W.2d at 391. Therefore, we conclude that the trial court did not abuse its discretion in overruling appellant's Rule 403 objection. *See Weatherred*, 15 S.W.3d at 542.

Even if we were to find error in the admission of the photographs, we would not conclude that appellant was harmed by the error. Error in the admission of evidence is non-constitutional error. *See* TEX. R. APP. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *Jabari v. State*, 273 S.W.3d 745, 754 (Tex. App.—Houston [1st Dist.] 2008, no pet.). We disregard any non-constitutional error that does not affect a defendant's substantial rights. *Barshaw*, 342 S.W.3d at 93. "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Jabari*, 273 S.W.3d at 754 (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)). We should not reverse a conviction for non-constitutional error if, after examining the record as whole, we have "fair assurance that the error did not influence the jury, or had but a slight effect." *See id.* (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

In making this determination, we consider the entire record, including any testimony and physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002). The weight of evidence of the defendant's guilt is relevant in conducting the

harm analysis under rule 44.2(b). *Neal v. State*, 256 S.W.3d 264, 285 (Tex. Crim. App. 2008); *Motilla*, 78 S.W.3d at 356–57. We may also consider the closing statements and voir dire, jury instructions, the State's theory, any defensive theories, and whether the State emphasized the alleged error. *Motilla*, 78 S.W.3d at 355–56.

Similar to *Prible*, the jury had already heard evidence about the circumstances of P.C.'s death. Appellant identifies no characteristic of the photographs that would tend to be more harmful than other properly admitted evidence. The State did not overly emphasize the photographs. Rather, as noted above, the State's discussion consumed very little of the trial. Moreover, evidence of appellant's guilt was strong. Appellant, who recently left a bar, was operating his vehicle while legally intoxicated. He collided with Y.C.'s vehicle from behind at a velocity which exceeded the speed limit by forty miles per hour. Furthermore, appellant did not brake and took no evasive action to avoid the collision. Finally, there was ample evidence that Y.C. suffered serious bodily injury as a result of the collision. The admission of photographs of P.C., even if erroneous, did not violate appellant's substantial rights.

We overrule appellant's sole issue.

### III. Conclusion

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
29th day of August, 2018.

13