

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1615-10

### MARK DAVID BARSHAW, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### BELL COUNTY

**JOHNSON, J., delivered the unanimous opinion of the Court.**

### O P I N I O N

A jury found appellant, Mark Barshaw, guilty of sexual assault.[1] The trial court sentenced

him to twelve years' imprisonment.[2] The Third Court of Appeals, with one dissenter,[3] reversed the

conviction and remanded the case for a new trial because the trial court permitted an expert witness

---

[1] TEX. PENAL CODE § 22.011.

[2] I C.R. at 26.

[3] Justice Henson would have found the error harmless and then address his remaining issues on appeal.

to testify that the class of persons to which the complainant belongs tends to be truthful.[4] Subsequently, this court granted the state's petition for discretionary review to determine whether the court of appeals erroneously reviewed only a portion of the record and substituted its judgment as to the credibility of the witnesses for that of the fact finder and thus tainted the harm analysis. After examining the record, we reverse the judgment of the court of appeals and remand this case for a full harm analysis.

## Statement of Facts

The complainant, K.B., was twenty-one years old at the time of the alleged incident and is mentally retarded, functioning at approximately a ten-year-old level. K.B. testified that she knew appellant as the person who fixed the air conditioner in her home. She remembered an incident, but not the exact date, when appellant came to her room and woke her. She testified that appellant took off her pajamas and underpants and then touched her breasts and legs as she laid in bed. He also spread her legs and "touched [her] pelvis." She indicated that appellant rubbed her breasts and her "pelvis." She did not know if appellant put his fingers in her "pelvis." K.B. further testified that appellant did not remove his clothes, and that he helped her put her pajamas back on after touching her. K.B. recalled telling her mother what had happened and going to see a doctor.

During the trial, the state called Rebecca Barthlow, a mental-retardation psychologist who had worked with K.B. When asked by the prosecution about the ability of people with mental retardation to fabricate or make up elaborate stories, Barthlow responded, "It's been my experience that folks with mental retardation can be painfully honest, really."[5] Defense counsel objected that

---

[4] *Barshaw v. State*, 320 S.W.3d 625 (Tex. App.—Austin 2010).

[5] V R.R. at 41.

testimony that a class of people are truthful was inadmissible. The court overruled the objection, and Barthlow continued, "I'm not going to say that it would never happen. I mean, anybody is capable of making up something, but it's very simplistic in nature . . . it would be like a lie a child would tell."[6]

Expert testimony that a particular class of persons to which the victim belongs is truthful is not expert testimony of the kind that will assist the jury, as is required by Texas Rule of Evidence 702, and is thus inadmissible.[7] In this case, the trial court erred by admitting Barthlow's testimony. The court of appeals properly found the trial court abused its discretion by overruling appellant's objection and admitting the testimony.[8] However, the court of appeals also held that the error was harmful. We reverse that holding and remand this cause to the court of appeals for a full harm analysis.

## Standard of Review

On appellate review, and pursuant to Texas Rule of Appellate Procedure 44.2(b),[9] a non-constitutional error must be disregarded unless it affects the defendant's substantial rights. This court "will not overturn a criminal conviction for non-constitutional error if the appellate court, *after examining the record as a whole*, has fair assurance that the error did not influence the jury, or

---

[6] V R.R. at 43.

[7] *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993).

[8] *Barshaw*, 320 S.W.3d at 630.

[9] Rule 44.2(b) Other errors. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

influenced the jury only slightly."[10]  In considering the potential to harm, the focus is not on whether the outcome of the trial was proper despite the error, but whether the error had a substantial or injurious effect or influence on the jury's verdict.[11]  A conviction must be reversed for non-constitutional error if the reviewing court has grave doubt that the result of the trial was free from the substantial effect of the error.[12]  "Grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error."[13]  "[I]n cases of grave doubt as to harmlessness the petitioner must win."[14]

The "danger posed by the erroneous admission of expert testimony that was a direct comment on the complainant's credibility was that the jury could have allowed that testimony to supplant its decision."[15]  In assessing the likelihood that the jury's decision was improperly influenced, the appellate court must consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case.[16]  The reviewing court may also consider the jury instruction given by the trial judge, the

---

[10] *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001) (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)).

[11] *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000).

[12] *Burnett v. State*, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002).

[13] *Id.* at 637-38.

[14] *Id.* at 638 (citing *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995), and thereby adopting the federal standard ("When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win.")).

[15] *Schutz*, 63 S.W.3d at 445.

[16] *Morales v. State*, 32 S.W.3d at 867;  *Haley v. State*, 173 S.W.3d 510, 518-19 (Tex. Crim. App. 2005).

state's theory, defensive theories, closing arguments, voir dire, and whether the state emphasized the error.[17]

## Analysis

The court of appeals concluded that this was a "she said, he said" case because, although there was physical evidence that the complainant, K.B., had been penetrated, the evidence did not link appellant to that penetration.[18]  Therefore, "the outcome ultimately turned on the jury's assessment of the relative credibility of the two principal parties' testimony."[19]  The court of appeals considered appellant "on the face of it, a credible witness" based upon his age, marital status, prior military service, college degree, lack of a criminal record, and the testimony of several witnesses to his good character.[20]  The court acknowledged, however, that appellant had been dismissed from his job for approaching two females with mistletoe following a company Christmas party and that there were some inconsistencies between his trial testimony and the statement he made to the police following his arrest.[21]

The court of appeals labeled K.B. an "impaired witness" because of her mental retardation and pointed out that there were inconsistencies and omissions in her testimony.  The court of appeals concluded that Barthlow's challenged testimony must have significantly impacted the jury's determination in assessing K.B.'s credibility, which led the court to have grave doubt as to the error's

---

[17] *Id.*; *see also Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002) (*citing King,* 953 S.W.2d at 272).

[18] *Barshaw*, 320 S.W.3d at 630.

[19] *Id.*

[20] *Id.*

[21] *Id.*

harmlessness.

Although the court of appeals considered this a "she said, he said" case turning on the credibility of the principal parties' testimony, there was additional evidence and testimony for the jury to consider in reaching its verdict regarding the credibility of both K.B. and appellant. The court of appeals found that, because of inconsistencies and omissions in K.B.'s testimony, it would be understandable for the jury to be concerned that K.B.'s account was mistaken or even a fabrication. However, the omission—that K.B. did not testify that she had been penetrated—should be considered in light of the testimony by Deborah Kleypas, the sexual-assault nurse who examined K.B. on the morning of the alleged incident. Kleypas testified that it is not unusual for a child, or even an adult, to describe an assault as a touching when the evidence indicates that there was a penetration because the victim may not understand his or her own anatomy.[22] K.B. testified that appellant touched her "pelvis," and Kleypas testified that she found an abrasion to the posterior fourchette,[23] approximately 1.75 centimeters long and 1 centimeter wide, that could have resulted only from penetration. The results of the exam, Kleypas testified, were consistent with the events K.B. had described.[24]

While appellant's testimony contradicted K.B.'s testimony, it also contradicted the testimony of D.B., K.B.'s mother. According to appellant, on the day of the alleged incident, he stopped by the convenience store where D.B. worked and asked if he could go by and check on her heater after

---

[22] V R.R. at 118.

[23] The small area of tissue towards the back of the female genitals where the labia minor meet.

[24] V R.R. at 122.

his recent repair.[25] Appellant testified that D.B. was busy at the time and did not respond, but that he drove to D.B.'s house, where he found K.B. Appellant also testified that he did not know at that time that K.B. was mentally retarded.[26]

D.B., however, testified that, when she saw appellant that day, he asked her about the heater, she told him that it was working fine, and she did not give him permission to go to her house.[27] D.B. also testified that K.B.'s mental impairment was apparent when people met her for the first time and that it was common knowledge.[28] D.B.'s testimony was supported by Kleypas, who testified that K.B.'s mental impairment was apparent when Kleypas first met her and that K.B.'s writing and altered gait, among other signs, indicated developmental delay.[29]

Additionally, appellant testified that he had been alone with K.B. at the time of the alleged incident and that he had grabbed her shoulders and kissed her on her left cheek.[30] He testified that this was in response to K.B. saying that it was her birthday, but D.B. testified that K.B.'s birthday was not until December 30.[31] These contradictions from appellant's own testimony, when viewed in the context of the record as a whole, provide a basis for a jury to question appellant's credibility even without considering K.B.'s testimony.

---

[25] V R.R. at 258.

[26] VI R.R. at 7.

[27] IV R.R. at 59.

[28] IV R.R. at 56-57.

[29] V R.R. at 118.

[30] V R.R. at 262.

[31] Testimony indicated that K.B. functions at the level of a ten-year-old, an age at which children know when their birthday is.

The state did not address the erroneously admitted testimony in closing arguments or pursue the matter further, thereby somewhat mitigating the effect of the error. Additionally, the jury was properly instructed that it was the exclusive judge of witness credibility.

Even in cases in which credibility is paramount, Texas courts have found harmless error when the inadmissible expert testimony was only a small portion of a large amount of evidence presented that the jury could have considered in assessing the victim's credibility.[32] Upon reviewing the record as a whole, we find that additional evidence exists that should have been considered in the court of appeals's harm analysis, as is required by *Schutz*.[33]

We reverse the judgment of the court of appeals and remand this cause so that the court of appeals may conduct a full harm analysis based on the entirety of the record and address appellant's remaining issues.

Delivered: June 29, 2011
Publish

---

[32] *Schutz*, 63 S.W.3d 442.

[33] *See id*.