**Affirmed as Modified; Opinion Filed November 25, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01112-CR

### No. 05-13-01113-CR

## CRUZ FRANCO MARTINEZ A/K/A CRUZ MARTINEZ, J. CRUZ MARTINEZ, AND J. CRUZ MARTINEZ FRANCO, Appellant
## V.
## THE STATE OF TEXAS, Appellee

### On Appeal from the Criminal District Court No. 4
### Dallas County, Texas
### Trial Court Cause Nos. F12-63640-K and F12-61549-K

## OPINION

Before Justices Bridges, Francis, and Myers[1]
Opinion by Justice Myers

Appellant Cruz Franco Martinez[2] was convicted by a jury of two cases of aggravated sexual assault of a child under the age of fourteen, and the jury subsequently assessed a punishment of life imprisonment in both cases, which the trial court ordered to run concurrently. In two issues, appellant argues that (1) the trial court erred by admitting testimony that appellant contends was a comment on his post-arrest, post-*Miranda* silence, thereby violating the Fifth and Fourteenth Amendments and Article I, section 10 of the Texas Constitution; and (2) there is insufficient evidence in the record to support the trial court's orders for appellant to pay court

---

[1] Justice David Lewis was a member of the original panel and participated in the submission of this case; however, he did not participate in this opinion. Justice David Bridges has reviewed the record and the briefs in this case. *See* TEX. R. APP. P. 41.1(a).

[2] Appellant's name is spelled "Cruz Franco Martinez" in the parties' briefs and in the indictment and judgment in 05–13–01112–CR. It is spelled "J. Cruz Martinez" in the indictment and judgment in 05–13–01113–CR. In the notices of appeal, appellant signed his name as "Cruz Martinez." Meanwhile, appellant's wife testified that his name was "J. Cruz Martinez Franco," and appellant also testified that this was his name. Lacking documentation regarding appellant's true name, we include all of the aforementioned names in the heading of this case.

costs.  As modified, we affirm.

DISCUSSION

*Post-arrest, Post-Miranda Silence*

In his first issue, appellant contends the trial court erred by admitting testimony that commented on appellant's post-arrest, post-*Miranda* silence, thereby violating appellant's Fifth and Fourteenth Amendment rights.  In his second issue, appellant argues that the admission of this testimony also violated appellant's rights under Article I, section 10 of the Texas Constitution.

As part of its case-in-chief, the State called Detective Lisette Rivera of the Dallas Police Department.  Rivera had been assigned to investigate the allegations against appellant.  During Rivera's testimony, the State posed the following questions:

Q. [PROSECUTOR:]  Okay, and did you also make an attempt to talk to the defendant?

A. [RIVERA:]  I did.

Q. And did he talk to you?

[DEFENSE COUNSEL]:  Objection on the comment of the defendant's right to remain silent, Judge.

THE COURT:  Overruled.

Q. [PROSECUTOR:]  Did you talk—were you able to talk to the defendant?

A.  Whenever I attempted to speak with him, he was under arrest or he was read his *Miranda* rights.  And at that time, he exercised those rights and chose not to speak with me.

Q. Did you talk to anyone else involved in the case besides the two victims?

A. Yes.

Q. Was that the mom?

A. Yes, I spoke with the mother.

Q. Okay.

–2–

A. And I spoke with several other witnesses.

[PROSECUTOR]: Okay. Pass the witness, Your Honor.

A trial judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement. *Davis v. State*, 329 S.W.3d 798, 813–14 (Tex. Crim. App. 2010); *Russeau v. State*, 291 S.W.3d 426, 438 (Tex. Crim. App. 2009).

Appellant contends the trial court erroneously admitted testimony regarding his post-arrest, post-*Miranda* silence, thereby violating the Fifth and Fourteenth Amendments of the United States Constitution and Article I, section 10 of the Texas Constitution. He argues that the error invited the jury to draw negative inferences against appellant in a situation where the State's case rested on the testimony, and the credibility, of the two complainants. He also argues that it is "quite possible" that the jury used the above testimony as evidence of guilt.

The State responds that (1) the trial court did not err because the State's question was not objectionable as an impermissible comment on appellant's silence; (2) appellant's objection to the State's question as commenting on the defendant's right to remain silent was not sufficient to preserve his federal and state constitutional arguments for appellate review; and (3) appellant waived any error in the witness's allegedly improper comment by failing to object and request an instruction to disregard. The State also contends that the overwhelming nature of the evidence against appellant, and the fact that there was only a single, isolated reference to appellant's post-arrest, post-*Miranda* silence, rendered harmless any potential error from Detective Rivera's allegedly improper comment on appellant's exercise of his right to silence. We will focus our attention on the State's arguments regarding harm.

Assuming appellant's complaints were preserved for appellate review, and that the trial court erred by admitting the complained-of evidence, appellant was not harmed. *See* TEX. R.

–3–

APP. P. 44.2(b). The improper admission of evidence is non-constitutional error that an appellate court disregards unless the error affected an appellant's substantial rights. *Id*.; *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *Casey v. State*, 215 S.W.3d 870, 884–85 (Tex. Crim. App. 2007) (using harm analysis in rule of appellate procedure 44.2(b) in determining that evidence of appellant flashing a gang sign was harmless). We will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance the error did not influence the jury, or influenced the jury only slightly. *Barshaw*, 342 S.W.3d at 93.

In assessing potential harm, our focus is not on whether the outcome of the trial was proper despite the error but on whether the error had a substantial or injurious effect or influence on the jury's verdict. *Id*. at 93–94. We review the entire record to ascertain the effect or influence on the verdict of the wrongfully admitted evidence. *Id*. at 93; *see Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010) (in conducting harm analysis "we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence"). We consider all of the evidence that was admitted at trial, the nature of the evidence supporting the verdict, and the character of the alleged error and how it relates to evidence in the record. *Barshaw*, 342 S.W.3d at 94; *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the parties' theories of the case, closing arguments, voir dire, and whether the State emphasized the error. *Barshaw*, 342 S.W.3d at 94; *Motilla*, 78 S.W.3d at 355–56.

In this case, the evidence showed that appellant and Onesima Martinez had been married for thirty-two years and are the parents of six children—five daughters and a son. Three of their daughters, MCM, JM, and MFM, testified that appellant, their biological father, sexually abused them as children. MCM and JM were the complainants in 05–13–01112–CR and 05–13–01113–

CR, respectively, while MFM testified as a rebuttal witness for the State.

MCM, twenty years old at the time of trial, testified that appellant started sexually abusing her when she was eight or nine years old. MCM described an incident where appellant came into her bedroom when she was sleeping, got into bed with her, and started "like pulling my clothes down." He put his fingers in her vagina, and MCM recalled that this hurt. After a few or perhaps two minutes, he forced her over to her side, grabbed her from behind, and put his penis inside of her. MCM could feel appellant's penis moving in and out of her vagina. The following day, he behaved as though nothing had happened. MCM also recalled an incident where appellant rubbed her breasts under her clothes, kissed her, touched her vagina with his penis, and then had sexual intercourse with her.

MCM testified that appellant "was a very violent person and aggressive." She described an incident where her mother packed clothing and told appellant she and the children were going to leave him. He got furious and started hitting her. When MCM's brother tried to intervene, appellant turned around "and start[ed] beating him up." Appellant threatened to kill Onesima and the children if they called the police. He also threatened to kill himself. MCM testified that she and her sister would hide under the beds when appellant became violent. She also recalled an occasion when appellant and Onesima had been arguing, and Onesima went into the room MCM shared with her sister, saying, "[L]et's go, let's go, he's getting his guns." They fled the house in their pajamas and bare feet, staying with an uncle before Onesima eventually moved back in with appellant.

JM, MCM's twenty-three-year-old sister, testified that she was about seven years old when appellant started sexually abusing her. According to her testimony, the abuse began when, on a day she was not attending school because she was sick, appellant took her into his bedroom, put her on the bed, "and started messing around with me." Appellant "would put his hand on my

breast, or he would start going down towards my vagina over my clothes." As JM grew older, the abuse escalated to the point where appellant was touching her vagina and breasts under her clothes, sucking on her breasts, and biting her nipples. By the time JM was eight or nine, appellant was licking and sucking her vagina. When JM was around eleven years of age, appellant started inserting his penis into her vagina, and he continued to have sexual intercourse with JM approximately twice a week, almost every week, until she was around twelve or thirteen years old. The last incident she could recall occurred one night when JM was asleep. Appellant entered her room, covered her mouth "really hard," held her down, and pulled down her clothes. He got on top of her and moved his penis in and out of her vagina. She testified that this hurt and that she cried because she was scared, but appellant continued covering her mouth. When he suddenly stopped, he told her "not to say anything or he would hurt us."

JM testified that she still feared appellant. She noted that "[w]e had a lot of domestic violence in the house where [appellant] would be drinking, and he would get aggressive." Appellant threatened to kill everyone in the house if they called the police, including himself, and JM believed these threats because he had two rifles in the house. One night she woke to the sound of a rifle being fired into the air. JM also testified that appellant would beat her or her sisters, her brother, even her mother, and that he once hit JM in the mouth (causing it to bleed) when he asked her a question and she did not know how to respond.

Appellant denied that he had sexual relations with any of his daughters. He testified that MCM and JM had been influenced by their older sister, MFM. He suggested that they were fabricating the allegations against him because his daughters—according to Onesima, five of their children had been born in Mexico and were brought to the United States as children in 1994—hoped "to get their papers" by testifying against him. When asked what papers he was referring to, appellant replied, "Immigration." He also testified that they wanted him out of the

house because they desired "to bring men into the house, and I would not allow that."

The State's rebuttal witness, MFM, MCM's and JM's thirty-one-year-old sister, testified that she was appellant's oldest child, and had a permit to reside in the United States. She testified that when her family first came to the United States, they slept in a single room, and shared a bed, because the house where they lived was occupied by other people. MFM recalled it was around this time, when MFM was about thirteen years of age, that appellant first abused her sexually—grabbing her under her clothes, sticking his finger in her vagina, and sucking on her breasts. When appellant did this, MFM would hit him and tell him "grosero," which MFM translated as "like being dirty." She testified that she was the only one who would hit back at him when he grabbed at her.

Like her younger sisters, MFM testified that appellant had a violent temper. She recalled he had been violent toward her, her brother, and their mother. After one violent incident, MFM threatened to call the police, but she decided not to do so because appellant told her that "he had to get out sometime, and he was going to hurt my mom where she couldn't walk, and was going to take my baby sister away."

The record also shows that Detective's Rivera's statement quoted above was the only reference at trial to appellant's post-arrest, post-*Miranda* silence. There were no follow-up questions regarding appellant's invocation of his right to remain silent, nor did the State attempt to portray appellant's post-arrest, post-*Miranda* silence as some sort of admission of guilt, or suggest that appellant's guilt could be inferred from his invocation of the right to remain silent. The State never attempted to impeach appellant regarding his post-arrest, post-*Miranda* silence when he testified, nor was it mentioned in the State's closing argument. Given the strength of the State's case against appellant—three of his biological daughters testified that they were sexually abused by him when they were children—and the fact that there was only a single,

isolated reference to appellant's post-arrest, post-*Miranda* silence, we have a fair assurance that the statement about which appellant complains did not influence the jury, or influenced it only slightly. We overrule appellant's first and second issues.

### Court Costs

In his third issue, appellant contends there is insufficient evidence in causes 05–13–01112–CR and 05–13–01113–CR for the trial court's orders, included in the judgments in these cases, for appellant to pay $493 in court costs because there is no evidence to support the specific costs assessed by the court. Each clerk's record includes a "Bill of Costs Certification" signed by the deputy district clerk and certified by the district clerk, a computer printout that itemizes the costs assessed in each case, and an explanation of the abbreviations used in the itemization. Appellant nonetheless argues that the computer printouts do not qualify as bills of costs because there is no indication the computer printouts were ever filed in the trial court or brought to attention of the trial court before the costs were included in the judgments. These complaints have been previously considered and rejected. *See Johnson v. State*, 423 S.W.3d 385, 391–96 (Tex. Crim. App. 2014); *Coronel v. State*, 416 S.W.3d 550, 555–56 (Tex. App.—Dallas 2013, pet. ref'd). We overrule appellant's third and fourth issues.

### Modification of Judgments

The judgments incorrectly state that the "Sex Offender Registration Requirements do not apply to the Defendant," and they do not state the age of the victim at the time of the offense. Appellant's convictions for aggravated sexual assault of a child under the age of fourteen are among those defined as a "[r]eportable conviction or adjudication" for purposes of the sex offender registration statute. *See* TEX. CODE CRIM. PROC. ANN. art. 62.001(5)(A). As a person who has a reportable conviction or adjudication, appellant is subject to the registration requirements of that program. *See id.* art. 62.051.

–8–

As alleged in the indictments and proven in this case, the victims were younger than fourteen years of age on the alleged dates of the offenses. Because there is sufficient evidence to support the convictions in each case, and because the offenses in each case required a showing that the age of the victim was younger than fourteen, on our own motion we modify the judgments in 05–13–01112–CR and 05–13–01113–CR to show that the sex offender registration requirements apply and that the age of the victim at the time of the offense was younger than fourteen years of age. *See* TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (appellate court has authority to modify incorrect judgments *sua sponte* when the necessary information is available to do so); *see also Tyler v. State*, 137 S.W.3d 261, 267–68 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (authority to modify judgment not dependent upon a party's request); *Ruiz v. State*, No. 05–12–01703–CR & 05–12–01704–CR, 2014 WL 2993820, at *12 (Tex. App.—Dallas June 30, 2014, no pet.) (not designated for publication) (modifying judgments to show applicability of sex offender registration requirements and that age of victim at time of offense was younger than 14 years of age because evidence was sufficient to support convictions in each of the counts, which required a showing that age of victim was younger than fourteen years of age); *Medlock v. State*, No. 05–11–00668–CR, 2012 WL 4125922, *1–2 (Tex. App.—Dallas Sept. 20, 2012, no pet.) (mem. op., not designated for publication) (same); *Johnson v. State*, No. 05–06–00037–CR, 2007 WL 60775, at *7 (Tex. App.—Dallas Jan. 10, 2007, no pet.) (not designated for publication) (same).

As modified, the trial court's judgments are affirmed.

/ Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
131112F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CRUZ FRANCO MARTINEZ, Appellant

No. 05-13-01112-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F12-63640-K.
Opinion delivered by Justice Myers. Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62" should be changed to "Sex Offender Registration Requirements apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62"

"The age of the victim at the time of the offense was" should be changed to "The age of the victim at the time of the offense was younger than 14 years of age"

As **MODIFIED**, the judgment is **AFFIRMED**. We direct the trial court to prepare a new judgment that reflects these modifications.

Judgment entered this 25th day of November, 2014.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CRUZ FRANCO MARTINEZ, Appellant

No. 05-13-01113-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F12-61549-K.
Opinion delivered by Justice Myers. Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62" should be changed to "Sex Offender Registration Requirements apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62"

"The age of the victim at the time of the offense was" should be changed to "The age of the victim at the time of the offense was younger than 14 years of age"

As **MODIFIED**, the judgment is **AFFIRMED**. We direct the trial court to prepare a new judgment that reflects these modifications.

Judgment entered this 25th day of November, 2014.