In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00286-CR
_____

GEORGE GLYNN BANTA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 20-11-14200-CR

MEMORANDUM OPINION

In February 2021 a grand jury indicted appellant, George Glynn Banta, and alleged that in a period of 30 or more days between November 1, 2014, and November 1, 2020, he committed two or more acts of sexual abuse against children who were identified in the indictment by their

initials.[1] We will call the two children who are identified as the alleged victims of Banta's offenses as *Darla* and *Willow*, and we note they are Banta's daughters.[2] After the trial court signed the judgment, Banta appealed and filed a brief in which he complained that he did not receive a fair trial. In one issue, Banta argues he is entitled to another trial because the trial court excluded evidence that Willow "had made a claim of sexual misconduct by another man which she later recanted as having been a false report." For the reasons discussed below, we will affirm.

## Background

Since Banta doesn't argue the evidence is insufficient to support his conviction, we limit our discussion to the information needed to explain the Court's resolution of the issue raised in Banta's appeal. The case against Banta went to trial in August 2022. The following discussion of

---

[1]Tex. Penal Code Ann. § 21.02(b) (Continuous Sexual Abuse of Young Child).

[2]We have used pseudonyms to protect the privacy of several individuals who are mentioned in the opinion. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect to the victims' dignity and privacy throughout the criminal justice process"). We identify that we have used a pseudonym in lieu of the actual name with italics when the person is first mentioned in the opinion.

the evidence views the evidence admitted before the jury in the light that favors the verdict.[3]

It was undisputed that Banta and his wife, Joanna, had seven children during their marriage, which began in 1999 and ended in divorce in 2014. After they divorced, the children continued to reside with their father except for the occasions they had visitation with their mother at her home.

In November 2020, Willow was fifteen years old when her grandmother took her to see a sexual assault nurse named Angie Chacko. At trial, Nurse Chacko testified that she interviewed Willow while conducting a sexual assault exam. According to Nurse Chacko, during the exam Willow told her that Banta touched her on her "boobs, butt, [and] private." Nurse Chacko added that when she asked Willow to point to her "private" Willow pointed to her sexual organ. Nurse Chacko also testified that Willow told her that her father began sexually abusing her when she was five or six years old.

---

[3]*Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

In August 2022 when the case was tried, Willow was seventeen years old. At trial, Willow testified that when she was fourteen, Banta touched her "private" with a massager. Willow described her "private" as the part she uses to "pee." According to Willow, the incident with the massager occurred in the kitchen of the home where the family lived in 2014. Willow added that the incident occurred while her sister Darla was in the room. Willow told the jury that when the incident involving the massager occurred, Banta smiled "[l]ike he enjoyed it."

During the trial, the prosecutor asked Willow whether she had made "an allegation against one of [her] mom's old boyfriends after her parents were divorced?"[4] Willow acknowledged that she had, told the prosecutor that the incident involving her mother's old boyfriend (whom Willow didn't name) had occurred, but later told another it did not

___

[4]Before the prosecutor called Willow to testify, the parties' attorneys and the trial court discussed the possibility that Willow might testify about accusing her mother's boyfriend of sexual assault and that in May 2022, Willow told a forensic interviewer that the assault didn't occur. In discussing what Willow's possible testimony might be with the court outside the presence of the jury, the prosecutor told the trial court that "[t]his morning, Willow informed me that, that recant was false." According to the prosecutor, testimony that Willow "made the allegation and recanted" . . . "would be admissible[,]" but "the surrounding facts would not." The trial court advised the parties to approach the bench before going into "any evidence of previous sexual conduct[.]"

because she "didn't want to do the same thing that we are doing right now."[5] When the State finished questioning Willow, Banta's attorney approached the bench and asked that the court allow him to question Willow about why she had accused her mother's former boyfriend, a man we will refer to in the opinion as *Leo Smith,* of sexual assault.[6] Banta's attorney explained that two reasons justified his asking Willow about why she had accused Smith of sexual assault. First, he claimed the evidence he intended to develop would reveal why Willow had accused Smith of sexual assault, making it relevant to proving why Willow had a motive or bias to testify against Banta. That made the evidence admissible, the attorney argued, under Texas Rule of Evidence 613 because the evidence was relevant to Willow's bias.[7] Second, Banta's attorney claimed the evidence he wanted to develop would establish that Willow had a "habit of making false allegations, getting people arrested."[8]

---

[5]In a hearing outside the presence of the jury, the prosecutor told the trial court that Willow told a forensic investigator the assault that she had claimed Smith committed had not actually occurred.

[6]A pseudonym.

[7]Tex. R. Evid. 613 (Witness's Prior Statement and Bias or Interest).

[8]Despite the fact that Banta's attorney didn't refer the trial court to Texas Rule of Evidence Rule 406, which is the rule of evidence applicable to evidence a party wants to introduce regarding someone's habit, we assume the trial court would have known that Rule 406 makes evidence

Banta's attorney told the trial court that on cross-examination, he could establish the reason Willow accused Smith of sexually assaulting her was that she didn't want her mother, Joanna, dating Smith and instead, she wanted Joanna to be dating *Jay Peak*.[9] The attorney represented that Peak was the person the evidence would show that Willow was hoping that her mother would marry, and he could show that Willow wanted to change her name to Peak. Second, Banta's attorney argued that by questioning Willow about Smith, he could show that Smith was arrested. That evidence, the attorney continued, would show that Willow was in the "habit of making false allegations, getting people arrested."

After Banta's attorney made his argument to explain his theory about why allowing the scope of his cross-examination to include questioning Willow about why she had accused Smith of sexual assault, as discussed above, Banta's attorney asked the trial court: "Understand what I'm saying." In response, the trial court stated: "No, I do not." The prosecutor argued that on the record before the trial court, the details of

---

of a person's habit admissible if the person's "character trait is an essential element of a charge, claim or defense[.]" Tex. R. Evid. 406(b).

[9]A pseudonym.

the accusation Willow made against Smith and later withdrew were relevant only to the extent that Willow had made the accusation and subsequently withdrawn it.

The trial court sustained the prosecutor's objection based on lack of relevance. Then the trial court added that even if evidence about the fact that Smith had been arrested and the reasons for his arrest were relevant to an issue of material fact in Banta's trial, there wasn't a foundation showing that Willow knew for a fact that Smith had been arrested based on her accusation or showing that Willow knew what police had relied on when they made the arrest.

When Banta cross-examined Willow, he did not ask Willow whether she had falsely accused another man of sexual assault, whether she had accused Smith of sexual assault, or whether she had a reason to make a false claim against Banta asserting that he had touched her inappropriately when she was a child. Stated another way, he never asked Willow whether the reason she accused Banta of molesting her was that she didn't want to live in his home or because she would have preferred living with her mother.

Darla, who was fifteen years old when she testified, told the jury that Banta touched her many times on her sexual organ while "he was supposed to be putting medicine on [her], and he was instead enjoying himself while putting his hand in me[.]" When asked to demonstrate, Darla used a box of tissues and inserted her fingers in and out of the opening of the box to show the jury how her father had inserted his fingers in and out of her sexual organ. Darla also testified that Banta "put a machine up against my vagina" that "look[ed] like a showerhead." Darla added that she saw Banta use the vibrator on Willow and her two sisters, *Tonya* and *Beth*.[10]

*Grant*—Willow's brother—was fourteen years old when he testified at the trial.[11] The State called him to show that Banta sexually molested Darla and Willow. According to Grant, Banta made his sisters "sit on his lap, and he would rub them." Asked to be more specific, Grant explained he saw Banta grab Willow's "titty[,]" and that he saw his father touch Willow on the leg and slowly move his hand up her leg.

---

[10]Pseudonyms.
[11]A pseudonym.

Banta, who testified in his defense, denied that he sexually abused any of his children. Banta also called Tonya, the oldest of his daughters, as one of the eight witnesses called to testify in his defense. Tonya was twenty-one years old when she testified in the trial. Tonya explained that she understood Darla and Willow were claiming that their father sexually abused them. When asked what her response was to the allegations, Tonya testified: "Never happened." Tonya also said that if Banta did ever touch Darla or Willow inappropriately, Banta did so solely to treat "boo-boos," and when he did that, he always wore a glove.

Beth, another of Banta's children, was eighteen years old when she testified in Banta's trial. Beth told the jury that she never saw her father touch her sisters inappropriately on any of their private parts. According to Beth: "He did not do anything wrong."

Nevertheless, the jury weighed the evidence, assessed the credibility of the witnesses, and found Banta guilty of continuous sexual abuse as charged in the indictment. In the punishment phase of the trial, the jury assessed a ninety-nine-year sentence. The trial court signed a judgment consistent with the jury's verdict and Banta appealed.

## Standard of Review

We review a trial court's decision to limit or exclude evidence under an abuse of discretion standard.[12] We must uphold the ruling if the trial court made the correct ruling under any theory of law that applies.[13] We will reverse the ruling only if it "falls outside the zone of reasonable disagreement."[14]

## Analysis

On appeal, Banta complains the trial court erred in ruling that his attorney "would not be allowed to cross-examine [Willow] on the issue of having made a false report regarding a sexual offense by another man which she later recanted." Banta contends that had the trial court allowed his attorney to cross-examine Willow, Willow's testimony "would have revealed the witness was not trustworthy in relation to such a serious allegation and its serious implications."

---

[12]*Johnson v. State*, 490 S.W.3d 895, 917 (Tex. Crim. App. 2016); *see Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (noting that "trial judge has wide discretion in limiting the scope and extent of cross-examination").

[13]*Id.*

[14]*Id.*

As we pointed out, the prosecutor elicited testimony from Willow when presenting the State's case-in-chief that Willow had accused one of her mother's old boyfriends of touching her inappropriately and then changed her story later to say the assault didn't happen. At trial, Willow testified the assault did happen. So then the prosecutor asked Willow to explain why she changed her story about the accusation involving her mother's boyfriend twice, once to say it didn't happen and a second time at trial to say that it did. The prosecutor asked Willow: "Why did you tell them that it didn't happen?" Willow answered: "Because I didn't want to do the same thing that we are doing right now." Thus the jury knew that Willow had equivocated on a prior accusation she made on an alleged sexual offense that she made against another man.

At trial, Banta's attorney argued that under Rule 412 of the Texas Rules of Evidence, he had a right to cross-examine Willow about the details of the sexual assault claim she made against Smith because it was relevant to her bias and motive. "In a criminal case, subject to the limitations in Rule 412, a defendant may offer evidence of a victim's pertinent trait, and if the evidence is admitted, the prosecutor may offer

11

evidence to rebut it."[15] Although subject to five exceptions, Texas Rule of Evidence 412 constrains the admissibility of evidence of specific instances of the victim's past sexual behavior in a prosecution for aggravated sexual assault.[16] The exception that Banta argued applied at trial is the exception in Rule 412(b)(2)(C), which provides that evidence of specific instances of a victim's past sexual behavior is admissible if the evidence "relates to the victim's motive or bias[.]"[17] But even when the evidence of the specific instances of the victim's past sexual conduct relates to the victim's motive or bias, the probative value of the evidence must still outweigh the danger of unfair prejudice.[18]

In the trial court, Banta's attorney argued that Willow's motive in accusing Smith—that she wanted her mother to marry Peak—would reveal Willow's bias or interest in testifying against Banta. Except for arguing that the evidence was admissible under Rule 412, he did not complain about the trial court's ruling or offer any proof that demonstrates the evidence was relevant to Willow's alleged bias or

---

[15]Tex. R. Evid. 404(2)(A).
[16]*Id.* 412(b).
[17]*Id.* 412(b)(2)(C).
[18]*Id.* 412(b)(3).

motive in testifying against Banta.[19] The record shows Banta and Willow's mother were already divorced when Willow accused Smith of sexual assault. Further, nothing in the record shows that Willow's mother and Banta were dating or were considering getting back together following their divorce in 2014. Understandably, since Willow's desire to change her name to Peak did not appear to be relevant to any motive Willow might have had in accusing her father of sexually molesting her, we hold the trial court did abuse its discretion in ruling the evidence inadmissible under Rule 412.

Like the trial court, we don't understand how evidence that Willow wanted to change her name to Peak is connected to a claim that she would have had a motive to accuse her father of sexual abuse. Additionally, we have carefully reviewed the record and it does not show that the trial court prohibited Banta's attorney from examining Willow about the fact that she accused Smith of sexual assault or the fact that she later withdrew her accusation. Instead, the record shows the trial court refused to allow Banta's attorney to cross-examine Willow about *why* she accused Smith because Banta's attorney never explained why the reason

---

[19]*See id*. 103(a)(2).

13

for her accusing Smith was logically connected to a motive or bias that she might have had to testify against her father or to accuse him of sexual abuse.

Under Texas law, "[t]he proponent of evidence to show bias must show that the evidence is relevant. The proponent does this by demonstrating that nexus, or logical connection, exists between the witness's testimony and the witness's potential motive to testify in favor of the other party."[20] On appeal, Banta argues that the limitation on his cross-examination of Willow violated his rights under the Confrontation Clause of the Sixth Amendment. We don't question that "[t]he constitutional right of confrontation includes the right to cross-examine the witnesses and the opportunity to show that a witness is biased or that his testimony is exaggerated or unbelievable."[21] "Nonetheless, the trial judge retains wide latitude to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant."[22] "The constitutional right

---

[20]*Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004).
[21]*Irby v. State*, 327 S.W.3d 138, 143 (Tex. Crim. App. 2010).
[22]*Id.* (cleaned up).

to cross-examine concerning the witness's potential bias or prejudice does not include cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."[23]

We conclude it was within the trial court's discretion to restrict the cross-examination that Banta's attorney proposed because Banta failed to meet his burden to "show a logical connection between the evidence suggesting bias or motive and the witness's testimony."[24] Furthermore, even assuming for purposes of argument that the trial court erred in refusing to allow Banta's attorney to question Willow about the reasons she accused Smith of sexual assault, the record from the trial shows the ruling didn't prevent Banta from presenting his defense.[25] To show the exclusion of the evidence deprived an appellant of a fair trial such that it amounted to a constitutional error, as Banta argues, the appellant must show that "the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense."[26] Errors like the one Banta complains of in admitting evidence

---

[23]*Id.* (cleaned up).
[24]*Id.* at 152.
[25]Tex. R. App. P. 44.2(a).
[26]*Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002).

15

are considered non-constitutional, and we will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance the error did not influence the jury or influenced the jury only slightly.[27]

There are at least three reasons the record shows the district court's ruling did not prevent Banta from presenting his defense. First, the jury had the benefit of testimony from a friend of the Banta family who was familiar with Willow and expressed the opinion that Willow had a poor reputation for telling the truth. Cheryl Phillips testified that she has known the defendant for more than twenty years and "know[s] all about his family." When Banta's attorney asked Phillips whether she had an opinion about Willow's reputation for trustworthiness and truthfulness, Phillips answered: "She will lie."[28]

Second, Banta presented his theory to the jury that the children who testified against him—Darla, Willow, and Grant—were lying because he was a strict parent compared to their mother and there were advantages to living with her. Third, Banta's attorney did develop his

[27]*Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011).
[28]*See* Tex. R. Evid. 608 (A Witness's Character for Truthfulness or Untruthfulness).

16

theory that Willow wanted her mother to marry Peak. During the trial, Banta's attorney asked Willow whether she recalled that her mother dated Peak, and Willow acknowledged that she did. Then he asked: "Did you want to change your name to [Peak] at one time?" Willow answered: "Yes, sir." When Banta called his daughter Beth to testify in his defense, she also testified that her brother (Grant) and sister (Willow) wanted to change their names to Peak.

To sum it up, the exceptions in Rule 412 don't automatically open the door to a witness being examined on matters not shown to be relevant to a witness's bias or motive.[29] On this record, we conclude that even were we to agree (and we don't) that the trial court erred in restricting the scope of Willow's cross-examination to prevent Banta's attorney from exploring why Willow accused Smith of sexual assault, the "error" didn't deprive Banta of a substantial right. Therefore since any alleged "error" would have been non-constitutional, it must be disregarded.[30]

---

[29]*See Irby*, 327 S.W.3d at 152 ("It is not enough to say that all witnesses who may, coincidentally, be on probation, have pending charges, be in the country illegally, or have some other 'vulnerable status' are automatically subject to cross-examination with that status regardless of its lack of relevance to the testimony of that witness.").

[30]*See* Tex. R. App. P. 44.2(b); *Potier*, 68 S.W.3d at 666.

Conclusion

For the reasons explained above, we conclude that Banta failed to establish the trial court erred in ruling that his attorney could not question Willow about why she accused Smith of sexual assault. We also conclude that even if the trial court erred in limiting the scope of Banta's cross-examination on grounds of relevance, the error was non-constitutional and must be disregarded. We overrule Banta's sole issue. Accordingly, the trial court's judgment is

AFFIRMED.

HOLLIS HORTON
Justice

Submitted on August 1, 2023
Opinion Delivered November 1, 2023
Do Not Publish

Before Horton, Johnson and Wright, JJ.