**Affirmed as Modified and Memorandum Opinion filed April 9, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00770-CR

---

**JOSE NICOLAS-GONZALEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the
Hays County, Texas
Trial Court Cause No. CR-19-4126-E**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Jose Nicolas-Gonzalez of two counts of aggravated sexual assault of a child. *See* Tex. Penal Code Ann. § 22.021(a)(2)(B). The jury assessed punishment at sixty years' confinement. On appeal, Appellant asserts (1) the trial court erred in allowing Complainant's mother to testify as an outcry witness, and (2) the trial court's Judgments of Conviction contain clerical errors that warrant modification. For the reasons below, we affirm the trial court's judgments as modified.

BACKGROUND

Appellant was arrested and charged with two counts of aggravated sexual assault of a child stemming from an incident with his niece, Complainant. Complainant was ten years old when the alleged abuse occurred.

Appellant proceeded to a jury trial in September 2022. Before trial commenced, a hearing was held outside the jury's presence to address whether the State could present outcry testimony from either Complainant's mother ("Mother") or forensic interviewer Maggie Ortuno. *See* Tex. Code Crim. Proc. Ann. art. 38.072 (permitting a witness to testify to hearsay statements made by a child sexual abuse complainant under certain circumstances). The trial court ruled that both Mother and Ortuno could testify as outcry witnesses.

Testifying at trial, Mother explained that she lived in a trailer adjacent to her sister and her sister's husband, Appellant. Mother has five children and, at the time of the incidents forming the basis of Appellant's charges, her second-oldest child was frequently being hospitalized for cancer treatment. Mother said her other children would regularly spend time at Appellant's home, particularly when Mother was at the hospital.

Mother then testified as follows about a conversation she had with Complainant the evening of December 2, 2019:

| Mother: | So [Complainant] said — we're getting ready for bed and we're laying down and we're getting ready for the week, and she says, Mom, I need to tell you something. And I said, okay, well, what is it? Tell me. We need to go to sleep. She says, well, [Appellant] has been touching me and I said — I sat up in bed and I said, where does he touch you? [Complainant] pointed down to her vaginal area. |
| --- | --- |
| | I said, like, how many times has he touched you? |

|  |  |
|---|---|
|  | And she didn't know her numbers then. She's learning now. I said, how many times, [Complainant]? And she says, more than this, Mom. And I said okay. |
| Prosecutor: | When she said that, what number did you indicate that? |
| Mother: | I said 10, more than 10, and she says, more than this, Mom. |
| Prosecutor: | And for the record, [Mother] is lifting up both of her hands with her palms open and indicating and saying 10. |

\* \* \*

|  |  |
|---|---|
| Prosecutor: | Now, did [Complainant] say anything else after that? |
| Mother: | She did. |
| Prosecutor: | What did she say? |
| Mother: | She said, I want you to know I didn't know how to tell you because I don't want this to happen to my little brother. He was my little one at the time. I said, okay, I am going to take care of this for you. I am going to — I told her what I was going to do. I was going to call the police and you're going to have to tell them. I said, thank you for trusting me and thank you for telling me and I left. |

According to Mother, she called law enforcement to report the incident and took Complainant for a forensic interview several days later.

The jury also heard testimony from Maggie Ortuno, a forensic interviewer. As Ortuno explained, a forensic interview "is an interview of a child that is conducted after allegations of child abuse, neglect, or exposure to a violent crime are made to authorities." Ortuno said she conducted a forensic interview with Complainant on December 4, 2019.

Ortuno testified as follows regarding Complainant's account of the allegations regarding Appellant:

Prosecutor:    Okay.  What did [Complainant] describe occurred or had occurred?

Ortuno:    So [Complainant] stated that she had been touched on her body.  So I asked her where on her body she had been touched and she indicated by her belly button.  I asked who she had been touched by?  She indicated that she was touched by an uncle and proceeded to explain that she had been touched — I'm assuming you want me to go into the details.

Prosecutor:    Continue, yes.  Did she elaborate on the location or on her body where she had been touched?

Ortuno:    Yes, sir.  So [Complainant] indicated that she was touched on her vagina by her uncle.

Prosecutor:    Vagina, is that the word she used?

Ortuno:    It was.  Not initially, but, yes, it was.

Continuing on, Ortuno said she presented Complainant with an anatomical drawing so Complainant could provide further details regarding the allegations.  Ortuno said she asked Complainant where on her body Appellant touched her and Complainant "wanted to show me with the marker and so she put a dot with a marker on the vaginal area of the anatomical drawing."  Ortuno then testified that:

[O]nce [Complainant] had indicated with the marker where on her body she was referring, I asked her what do you call that part of the body where you put the mark?  And she said vagina.  I asked what — I can't recall the exact question I asked, but what had — what part of her — what did he use to touch her vagina?  She indicated it was his hand.

I asked what part of her uncle's hand touched your vagina.  She indicated it was his fingers.  I asked, what his hand did when it

4

touched her vagina? And she said, it went up. And then on the anatomical drawing there's a little line that indicates the labial plane of the vagina on the drawing. And I asked her if his finger had stayed on the outside of that line, went on the inside of that line, or something else? And she indicated that his fingers had gone inside of that line.

After hearing testimony from several other witnesses, the jury retired to deliberate and returned a verdict finding Appellant guilty of both counts of aggravated sexual assault of a child. The jury assessed punishment at 60 years' confinement for each count, which were ordered to run concurrently. Appellant timely appealed and his appeal was transferred to this court from the Third Court of Appeals by Texas Supreme Court Transfer Order.[1]

ANALYSIS

Appellant raises three issues on appeal and asserts:

1. the trial court abused its discretion by permitting Mother to testify as an outcry witness;

2. the trial court abused its discretion by permitting inadmissible hearsay testimony to be presented during Mother's testimony; and

3. the trial court's Judgments of Conviction each contain clerical errors that need to be corrected.

We consider Appellant's first and second issues together before turning to his third issue.

## I. Mother's Testimony

In his first issue, Appellant asserts the trial court abused its discretion in concluding that Mother could testify as an outcry witness as to what Complainant told her regarding the sexual abuse allegations. In his second issue, Appellant

---

[1] Because of the transfer, we must decide the case in accordance with the precedent of the Third Court of Appeals if our decision otherwise would have been inconsistent with that court's precedent. *See* Tex. R. App. P. 41.3.

contends that Mother's testimony about what Complainant told her was "inadmissible hearsay without an exception that was offered to prove the matter asserted." Because we conclude that any error in the admission of Mother's testimony was harmless, we overrule Appellant's first and second issues.

"Hearsay statements, while generally inadmissible, may be admitted under specific conditions when public policy supports their use, and the circumstances surrounding the making of those statements pedigree their reliability." *Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005). Article 38.072 of the Texas Code of Criminal Procedure, also known as the "outcry statute," creates a hearsay exception in the prosecution of certain sexual offenses against children for the admission of a child's first outcry of sexual abuse to an adult. *See* Tex. Code Crim. Proc. Ann. art. 38.072; *Bays v. State*, 396 S.W.3d 580, 581 n.1 (Tex. Crim. App. 2013). "Because it is often traumatic for children to testify in a courtroom setting, especially about sexual offenses committed against them, the Legislature enacted Article 38.072 to admit the testimony of the first adult a child confides in regarding the abuse." *Martinez*, 178 S.W.3d at 810-11. "This witness may recite the child's out-of-court statements concerning the offense, and that testimony is substantive evidence of the crime." *Id*. at 811.

To be admissible under article 38.072, "[t]he statement must be 'more than words which give a general allusion that something in the area of child abuse is going on;' it must be made in some discernible manner." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (quoting *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990) (en banc)). Accordingly, the proper outcry witness is the first adult to whom the alleged victim relates "how, when, and where" the abuse occurred. *Garcia v. State*, No. 03-14-00269-CR, 2016 WL 1691218, at *1 (Tex. App.—Austin Apr. 22, 2016, pet. ref'd) (mem. op., not designated for

6

publication).

Admissible outcry-witness testimony also is event-specific, not person-specific. *Lopez*, 343 S.W.3d at 140; *Gibson v. State*, 595 S.W.3d 321, 326 (Tex. App.—Austin 2020, no pet.). Thus, when a child has been a victim of more than one instance of sexual assault, multiple outcry witnesses may testify about separate acts of abuse committed by the defendant against the child. *Lopez*, 343 S.W.3d at 140; *Gibson*, 595 S.W.3d at 326.

We review a trial court's admission of outcry witness testimony for an abuse of discretion. *Gibson*, 595 S.W.3d at 325. The trial court has broad discretion in determining who qualifies as a proper outcry witness and we will uphold its determination if it is reasonably supported by the record and within the zone of reasonable disagreement. *Id*.

The erroneous admission of outcry testimony is reviewed for non-constitutional error. *See* Tex. R. App. P. 44.2(b); *Gibson*, 595 S.W.3d at 327. Similarly, the erroneous admission of hearsay testimony also is reviewed for non-constitutional error. *See, e.g.*, *Sandoval v. State*, 409 S.W.3d 259, 287-88 (Tex. App.—Austin 2013, no pet.). Under this standard, we disregard the error unless it affected the defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). An error affects the defendant's substantial rights when it has a substantial and injurious effect or influence in determining the jury's verdict. *See Barshaw v. State*, 342 S.W.3d 91, 93-94 (Tex. Crim. App. 2011). We will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury or influenced the jury only slightly. *Id*. at 93.

Here, we assume without deciding that the trial court erred in admitting the challenged portions of Mother's testimony. Because a review of the record shows

7

that Appellant did not suffer harm from the admission of this testimony, we conclude any error in the admission of this testimony was harmless. *See* Tex. R. App. 44.2(b).

The Third Court of Appeals repeatedly has held that any error in the admission of outcry witness testimony does not warrant reversal if the same or similar testimony was admitted during another portion of the trial without objection. *See Gibson*, 595 S.W.3d at 325-27 (concluding that any error in the admission of three outcry witnesses' testimony was harmless because "the victim testifie[d] in court to the same or similar statements that were improperly admitted"); *see also Wong v. State*, No. 03-19-00211-CR, 2020 WL 1482457, at *6-8 (Tex. App.—Austin Mar. 27, 2020, pet. ref'd) (mem. op., not designated for publication) ("Because Mother's testimony regarding Child's outcry was similar to the testimony that Child and the nurse examiner provided, any potential error from the admission of the outcry testimony was harmless."); *Garcia*, 2016 WL 1691218, at *3 (any error in the admission of the outcry witnesses' testimony was harmless because the complainant "provided detailed testimony at trial regarding several instances of sexual abuse" and "a sexual-assault nurse examiner who examined [the complainant] also testified about [the complainant's] reports of abuse").

We set out above Mother's testimony regarding Complainant's statements to her about the alleged sexual abuse. Because the jury heard similar testimony from Complainant and a sexual assault nurse examiner, any error in the admission of Mother's testimony was harmless. *See Gibson*, 595 S.W.3d at 325-27; *see also Wong*, 2020 WL 1482457, at *6-8; *Garcia*, 2016 WL 1691218, at *3.

Testifying at trial, Complainant said Appellant "touched" her on "[t]he vagina" five times. Complainant said it was "weird" and made her feel "[u]ncomfortable." Continuing on, Complainant said Appellant would touch her

"[u]nder [her] underwear" and said his fingers were "[l]ike moving a little bit." Complainant testified as follows with respect to what she told Mother:

> Prosecutor: Do you remember how long before you told your mom it happened?
>
> Complainant: No.
>
> Prosecutor: Without saying what she said, how did your mom react?
>
> Complainant: Surprised and sad.
>
> Prosecutor: Because what did you tell your mom? What did you say to your mom?
>
> Complainant: I told her what he did to me.
>
> Prosecutor: Do you remember exactly what you said?
>
> Complainant. That he touched me in the vagina.

The jury also heard testimony from Noella Hill, the nurse that performed Complainant's sexual assault examination on December 13, 2019. Relying on her exam report, Nurse Hill read the oral history she received from Complainant at the time of the examination:

> Patient had her head down. Patient sat with her hands in her lap and stared at the floor. Patient was asked if anyone had ever made her feel sad, bad, or uncomfortable? Yes, my uncle. What's your uncle's name? [Appellant]. Is he a child or adult? Adult.
>
> What did he do to make you feel uncomfortable? He touched me with his hands. Where did he touch you? In my vagina. Did he touch you under or over the clothes? Under. Where did this happen? At my Aunt Debbie's house. What did he do with his hands when he touched you? He touched me down there. Patient pointed to her crotch area.
>
> Did it hurt? It felt uncomfortable.

*        *        *

How many times has he touched you in your vagina?  I think like 10 times.  It was a lot.  How did he make you feel?  It made me feel afraid.  Do you remember who was there in the house when this happened?  Yes, my aunt and cousins.

*    *    *

Can you remember when he first started to touch you?  I was 9.  I was in fourth grade.  I had to stay over at my aunt's because my mom had to take care of my big brother and my grandpa.

Mother's testimony at trial regarding what Complainant told her was very similar to the testimony from Complainant and Nurse Hill.  Specifically, Mother testified that Complainant said Appellant had "been touching" her and "pointed down to her vaginal area."  According to Mother, Complainant indicated that the touching occurred more than 10 times.  Both Complainant and Nurse Hill testified to the same at trial — and provided significantly more detail than Mother.  Therefore, we conclude that any error in the admission of the challenged portion of Mother's testimony was harmless.  *See* Tex. R. App. P. 44.2(b); *see also, e.g.*, *Gibson*, 595 S.W.3d at 325-27; *Wong*, 2020 WL 1482457, at *6-8; *Garcia*, 2016 WL 1691218, at *3.

We overrule Appellant's first and second issues.

## II. Errors in the Judgments of Conviction

After the jury returned a verdict and assessed punishment, the trial court signed two Judgments of Conviction.  Appellant asserts that there (1) is a clerical error in the judgment for Count I, and (2) are two clerical errors in the judgment for Count II.  In its response brief, the State "concedes that these clerical errors exist in the judgment, and that the proper remedy is for this court to modify the judgments and affirm as modified."

We have the power to correct and reform the judgment of the court below

"to make the record speak to the truth" when we have the necessary information to do so. *Munguia v. State*, 636 S.W.3d 750, 756 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (internal quotation omitted). In a criminal case, Texas Rule of Appellate Procedure 43.2(b) functions in part as a means for the appellate court to render judgment nunc pro tunc when the written judgment does not reflect what occurred in open court at trial. Tex. R. App. 43.2(b); *Munguia*, 636 S.W.3d at 756.

Here, we agree with Appellant and the State that the trial court's Judgments of Conviction contain clerical errors that, when considered in light of the record, warrant modification. *See* Tex. R. App. P. 43.2(b). First, both Judgments of Conviction state that Appellant pleaded "guilty" to the charged offenses even though, at trial, Appellant entered a plea of "not guilty." Second, the Judgment of Conviction for Count II lists "03/01/2019" as the "Date of Offense," even though the indictment for Count II states that the offense occurred "[o]n or about the 1st day of April, 2019."

Therefore, we sustain Appellant's third issue and modify the Judgments of Conviction as stated below.

## CONCLUSION

We overrule Appellant's first and second issues. We sustain Appellant's third issue and modify the trial court's Judgments of Conviction as follows:

Judgment of Conviction — Count I

We modify this Judgment of Conviction to state that Appellant pleaded "Not Guilty" to the charged offense.

Judgment of Conviction — Count II

We modify this Judgment of Conviction to (1) state that Appellant pleaded "Not Guilty" to the charged offense; and (2) list "04/01/2019" as the "Date of Offense."

We affirm the trial court's judgments as modified.

/s/    Meagan Hassan
Justice

Panel consists of Justices Hassan, Poissant, and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).